(No. 67718.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant and Cross-Appellee, v. LAWRENCE ANDREWS, Appellee and Cross-Appellant.

*Opinion filed February 20, 1992.*

414

416

FREEMAN, J., took no part.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, Randall Roberts and Marilyn Schlesinger, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Kenneth L. Jones, Assistant Appellate Defender, of the Office of

the State Appellate Defender, of Chicago, for appellee and cross-appellant.

. JUSTICE BILANDIC delivered the opinion of the court:

Defendant, Lawrence Andrews, was convicted in a jury trial of murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1), armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2), and aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4). The trial court sentenced defendant to an extended term of 70 years' imprisonment on the murder conviction, 30 years' imprisonment on the armed robbery conviction, and 5 years' imprisonment on the aggravated battery conviction. Subsequent to defendant's trial, but during the pendency of his direct appeals, the United States Supreme Court handed down its decision in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. On defendant's first appeal, the appellate court held that defendant had established a *prima facie* case of discrimination in the selection of his jury in violation of *Batson*. The appellate court remanded the cause to the trial court with directions to conduct a hearing to allow the State to come forward with race-neutral reasons for the use of its peremptory challenges. (*People v. Andrews* (1988), 172 Ill. App. 3d 394.) On the parties' cross-appeals to this court, we held that defendant was not eligible for an extended-term sentence and that the appellate court erred in deciding the *Batson prima facie* case issue. (*People v. Andrews* (1989), 132 Ill. 2d 451 (*Andrews I*).) We retained jurisdiction over the matter and remanded the cause to the trial court for a hearing to allow defendant to attempt to establish a *prima facie* case of racial discrimination under *Batson*. The trial court conducted a hearing and determined that defendant had failed to establish a *prima facie* case. The trial court proceeded to resentence defendant to 40 years' im-

prisonment for murder, 20 years' imprisonment for armed robbery, to run consecutively, and 5 years' imprisonment for aggravated battery, to run concurrently. We granted defendant's motion to set a briefing schedule in this court, limiting the issues to those concerning defendant's jury selection only.

The limited nature of our review requires only a brief recitation of the facts. Additional procedural facts will be discussed as needed in our analysis of each issue. On February 20, 1984, the murder victim, Richard Steinbrecher, and his girlfriend, Angela Atiles, exited the Eisenhower Expressway in their automobile and stopped at a traffic signal. While they waited for the light to change, two men, one of whom Atiles identified as defendant, approached the vehicle. Defendant entered the automobile and pointed a gun at both occupants. Defendant then fatally shot Steinbrecher, hit Atiles in the eye with the gun and demanded money from Atiles. Atiles gave defendant all the money she had and defendant and the other man left.

Two issues are presented for our review: (1) whether the trial court improperly prevented defendant from presenting certain testimony at the *Batson* hearing; and (2) whether the trial court's determination that defendant had failed to establish a *prima facie* case was against the manifest weight of the evidence.

I

Defendant first contends that the trial court erroneously prevented defendant from presenting certain testimony at the *Batson* hearing. Defendant was tried twice for the crimes perpetrated upon Steinbrecher and Atiles. At the first trial, defendant's codefendant was acquitted of murder and the jury was unable to reach a verdict on the issue of defendant's guilt. Defendant's second trial commenced in January 1986 and resulted in defendant's

convictions. The same prosecutors and the same defense attorneys participated in both trials.

At the *Batson* hearing conducted pursuant to this court's mandate, defendant presented the testimony of the attorney who represented him at both trials, Donald Bertelle. Defendant attempted to elicit from Bertelle testimony regarding an alleged conversation Bertelle had engaged in with members of defendant's first (hung) jury after the mistrial was declared. The State's objection to this line of questioning was sustained. After the objection was sustained, defense counsel made the following statement: "[J]ust for the record I would introduce that or offer that to show if in fact the prosecutors were present this goes into their thinking when selecting the second jury." Defense counsel then proceeded to continue her examination of Bertelle, without revisiting that line of questioning.

Defendant asserts that the trial court erroneously sustained the State's objection to this testimony. Defendant argues that the offered testimony would have revealed that the prosecutors heard something during that conversation which might have led them to believe that the presence of blacks on the first jury contributed to the failure to convict. Thus, the argument goes, the prosecutors would then have had a motive to discriminate against blacks in choosing the second jury. Defendant points out that *Batson* directs that a trial court should consider "all relevant circumstances" in resolving the *prima facie* case issue. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723.) Defendant argues that this evidence was a relevant factor which should have been considered in determining whether he had established a *prima facie* case.

The essence of defendant's argument is that evidence he attempted to present was wrongly excluded. It is well recognized that the key to saving for review an error in

the exclusion of evidence is an adequate offer of proof in the trial court. (See *People v. Jackson* (1989), 180 Ill. App. 3d 78, 91; *Yassin v. Certified Grocers of Illinois, Inc.* (1986), 150 Ill. App. 3d 1052, 1066; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §103.7, at 19 (5th ed. 1990).) The purpose of an offer of proof is to disclose to the trial judge and opposing counsel the nature of the offered evidence and to enable a reviewing court to determine whether exclusion of the evidence was proper. (*Jackson*, 180 Ill. App. 3d at 91.) The failure to make an adequate offer of proof results in a waiver of the issue on appeal. *Jackson*, 180 Ill. App. 3d at 91; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §103.7, at 20 (5th ed. 1990).

Where an objection is sustained to the offered testimony of a witness, an adequate offer of proof is made if counsel makes known to the trial court, with particularity, the substance of the witness' anticipated answer. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §103.7, at 21 (5th ed. 1990).) An offer of proof that merely summarizes the witness' testimony in a conclusory manner is inadequate. (*Mulhern v. Talk of the Town, Inc.* (1985), 138 Ill. App. 3d 829, 834.) Neither will the unsupported speculation of counsel as to what the witness would say suffice. (*Yassin*, 150 Ill. App. 3d at 1066.) Rather, in making the offer of proof, counsel must explicitly state what the excluded testimony would reveal and may not merely allude to what might be divulged by the testimony. (*People v. Brown* (1982), 104 Ill. App. 3d 1110, 1119.) The offer serves no purpose if it does not demonstrate, both to the trial court and to reviewing courts, the admissibility of the testimony which was foreclosed by the sustained objection. *People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 91.

We find that, in the instant case, defense counsel failed to make an adequate offer of proof as to the sub-

stance of Bertelle's testimony concerning the alleged conversation. Defense counsel's sole "offer of proof," if it can be termed that, consisted of her statement that "if in fact the prosecutors were present this goes into their thinking when selecting the second jury." No specifics were offered concerning the content of the statements that were made during the alleged conversation. In fact, no offer whatsoever was made as to what was said in this conversation. There is thus no record from which this court can determine if the excluded evidence had any relevance to the proceedings at hand. Defense counsel's statement amounted to no more than mere speculation as to what she believed the relevancy of the testimony might be, without any reference to what the testimony would actually consist of. Such speculation is not sufficient to preserve the issue for review. (See *Yassin*, 150 Ill. App. 3d at 1066.) We thus conclude that defendant's failure to make an adequate offer of proof resulted in the waiver of this issue on appeal.

## II

Defendant next argues that the trial court erred in determining that defendant had failed to establish a *prima facie* case of discriminatory jury selection. Defendant, who is black, contends that the evidence was sufficient to raise the inference that the prosecution had used its peremptory challenges to exclude black venirepersons based solely on their race.

As noted, defendant's second trial commenced in January 1986. Following the *voir dire* and selection of defendant's jury, defense counsel made a motion for a mistrial on the grounds that the prosecution had used its peremptory challenges to exclude blacks from the jury based solely on their race. The trial court, relying on pre-*Batson* law, denied defendant's motion.

Prior to the United States Supreme Court's decision in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, a defendant could obtain a reversal based upon racially discriminatory jury selection only by establishing a systematic and purposeful pattern of excluding venire members on the ground of race in "case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be." (*Swain v. Alabama* (1965), 380 U.S. 202, 223, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 837.) The evidentiary burden enunciated in *Swain* was in effect at the time of both of defendant's trials. During the pendency of defendant's direct appeals, *Batson* was handed ·down and a new test for discriminatory exclusion was announced.

In *Batson*, the Supreme Court reaffirmed the principle "that the State denies a black defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded." (*Batson*, 476 U.S. at 85, 90 L. Ed. 2d at 80, 106 S. Ct. at 1716.) *Batson* held that a defendant could establish a case of racial discrimination in the selection of his jury solely on evidence concerning the prosecutor's use of peremptory challenges at defendant's own trial. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723.) The Supreme Court subsequently announced in *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708, that the rule of *Batson* would apply to all cases that were pending on direct review at the time of the *Batson* decision. In light of the new and substantially altered evidentiary burden announced in *Batson*, this court, on defendant's first appeal, held that defendant was entitled to a second opportunity to make his case for discriminatory jury selection. Accordingly, we remanded this cause to the trial court for an evidentiary hearing on the *Batson* issue.

*Batson* established a two-step procedure for the resolution of a defendant's claim that the prosecution used its peremptory challenges in a racially discriminatory manner. First, the defendant must establish a *prima facie* case of purposeful discrimination in the selection of his jury. Once the defendant makes a *prima facie* showing, the burden shifts to the State to come forward with a race-neutral explanation for challenging each of the venirepersons. (*Batson*, 476 U.S. at 96-97, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723.) The trial court must then consider those explanations and determine if the defendant has established purposeful discrimination. *Batson*, 476 U.S. at 98, 90 L. Ed. 2d at 88-89, 106 S. Ct. at 1724.

A *prima facie* showing of discrimination under *Batson* requires that the defendant raise the inference that the prosecutor exercised peremptory challenges to remove venire members based upon their race. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723; *People v. Edwards* (1991), 144 Ill. 2d 108.) The defendant is entitled to rely on the fact that peremptory challenges "constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' " (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723, quoting *Avery v. Georgia* (1953), 345 U.S. 559, 562, 97 L. Ed. 1244, 1247-48, 73 S. Ct. 891, 892.) The defendant must establish that this fact and the relevant circumstances of his case raise an inference of racial discrimination by the State in the selection of the defendant's jury. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723.) *Batson* mandates that the trial court should consider "all relevant circumstances" in determining whether the requisite showing has been made. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723.) This court has determined that the standard for reviewing a trial court's decision on this is-

sue is whether the determination is against the manifest weight of the evidence. *People v. Mahaffey* (1989), 128 Ill. 2d 388, 413; *People v. Evans* (1988), 125 Ill. 2d 50, 64.

Under *Batson*, in order to establish a *prima facie* case of discriminatory jury selection, a defendant had to show that he was a member of a cognizable racial group and that the prosecutor had exercised peremptory challenges to remove from the venire members of the defendant's race. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723.) The United States Supreme Court eliminated this requirement in *Powers v. Ohio* (1991), 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364, where it held that "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race." (*Powers*, 499 U.S. at ___, 113 L. Ed. 2d at 419, 111 S. Ct. at 1366.) Thus, in light of *Powers*, a defendant is no longer required to show that he is a member of a cognizable racial group whose members have been excluded in order to have standing to pursue a *Batson* claim. (See *Edwards*, 144 Ill. 2d at 152.) However, we find that racial identity between the defendant and the excluded venireperson, while not required, remains a relevant factor in determining if a *prima facie* case of discrimination has been established. (See *Powers*, 499 U.S. at ___, 113 L. Ed. 2d at 429, 111 S. Ct. at 1373-74.) As noted, defendant herein is black and he is challenging the prosecution's exclusion of black venirepersons. That circumstance supports the finding of a *prima facie* case of racial discrimination in the selection of defendant's jury.

In addition to shared race, a number of other factors are relevant in determining whether a *prima facie* case of discriminatory jury selection has been established. These factors include:

"a 'pattern' of strikes against black jurors; 'the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges' [citation]; the disproportionate use of peremptory challenges against blacks [citations]; the level of black representation in the venire as compared to the jury [citations]; whether the excluded blacks were a heterogeneous group sharing race as their only common characteristic [citation]; the race of the defendant and victim [citations]; and the race of the witnesses [citation]." *Evans*, 125 Ill. 2d at 63-64.

The trial judge in the case at bar determined that defendant had failed to establish a *prima facie* case of racial discrimination. In making this ruling, the trial judge relied almost exclusively on his observations regarding the prosecutors involved and the local conditions in Cook County. The judge first observed that these prosecutors had practiced before him on numerous occasions and that he believed that they were not racially prejudiced persons. The judge also stated that "every" jury in his courtroom included a number of black jurors and that the percentage of black representation on those juries usually exceeded the percentage of blacks in Cook County. The record contains no data from which the accuracy of the judge's observations on these statistics can be verified. The judge went on to comment that he found that middle-class blacks generally make strong State jurors. The judge also referred to the fact that three black jurors sat on defendant's jury and that one of those three was an older man who was, in the judge's opinion, a very strong person. Finally, the judge stated that certain "intangibles," which he could not articulate, led him to rule against a *prima facie* case. The judge made no reference to any of the other relevant considerations that determine whether a *prima facie* case has been established. At the hearing on defendant's motion to reconsider, the trial judge stated that his ruling was

"primarily" based upon the fact that he, as the trial judge, was in a "superior position" to determine whether a *prima facie* case had been established, and went on to reiterate his observations regarding the prosecutors and the local conditions in the county.

Defendant argues that the trial judge improperly overemphasized his observations concerning the prosecutors and the conditions in Cook County and neglected to adequately consider the other relevant factors mandated by this court's decisions. We agree.

It is apparent from the trial judge's oral ruling that he placed far too much emphasis on these "observations," to the exclusion of other relevant factors. Aside from his statements regarding his experience with the prosecutors and the local conditions, the trial judge made no mention of any of the factors which this court has found to be relevant to the *prima facie* case analysis. Specifically, the judge made no analysis of: whether a "pattern" of strikes against blacks was present (*Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723); whether the State had made a disproportionate use of its strikes against blacks (*Evans*, 125 Ill. 2d at 63); whether the excluded venirepersons were a heterogeneous group (*People v. McDonald* (1988), 125 Ill. 2d 182, 196); whether prosecutorial statements indicated racial motivation (*Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723); whether the level of black representation on the venire as compared to the jury indicated racial discrimination (*Mahaffey*, 128 Ill. 2d at 413); or whether the crimes with which ·defendant was charged were interracial (*Evans*, 125 Ill. 2d at 66).

While the trial judge's experience with local prosecutors and knowledge of local conditions are relevant factors in a *prima facie* case analysis, this court has never intimated that such considerations are dispositive of this issue. We find that the trial judge erred in failing to con-

sider all of the relevant factors in determining whether a *prima facie* case had been established. See *People v. Holman* (1989), 132 Ill. 2d 128, 173 (holding that the trial judge erred in not considering factors other than the number of black venirepersons excluded in ruling on the defendant's *prima facie* case).

We thus conclude that the trial judge's ruling on defendant's *prima facie* case was based upon an improperly limited consideration of the evidence. We further find that the ruling is contrary to the manifest weight of the evidence. We note that the standard we apply in reviewing the trial judge's determination on this issue is *not* whether the judge abused his discretion. Rather, it is our role to review the evidence in its entirety and to determine if the trial judge's ruling is against the manifest weight of the evidence. (*Mahaffey*, 128 Ill. 2d at 413.) Where the record reveals that the opposite conclusion is clearly warranted or that the trial judge's determination is unreasonable and not based upon the evidence, we have a duty to reverse that determination. (*Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 423; *Netzel v. United Parcel Service, Inc.* (1989), 181 Ill. App. 3d 808, 812.) Our review of the evidence in light of all the relevant factors reveals that a *prima facie* case of discrimination under *Batson* was clearly established and that the trial court's ruling was contrary to the manifest weight of the evidence.

The evidence in this case established a "pattern" of strikes by the State against black venire members. The record reveals the following evidence pertinent to this factor. While making his motion for a mistrial following the *voir dire* of defendant's second jury, defense counsel stated that "the record should also show that the State exercised eight out of the eight peremptories against blacks." The State neither objected to this statement nor

made a contrary statement for the record. At the *Batson* hearing, defendant's trial counsel Bertelle gave sworn testimony that the State had used eight out of eight peremptory challenges to exclude black venire members.

A "pattern" of strikes is created where the strikes affect members of a certain race to such a degree or with such a lack of apparent nonracial motivation that it suggests the possibility of racial motivation. The record shows that the prosecution exercised a total of eight peremptory challenges and that all of those challenges were directed toward black venirepersons. We find that the State's use of *all* of its challenges to exclude black venirepersons is strongly suggestive of racial motivation and thus constitutes a "pattern" of strikes against black venire members. See *People v. Harris* (1989), 129 Ill. 2d 123, 173 (State's use of 15 out of 20 peremptory challenges to exclude blacks constituted a "pattern" of strikes against blacks); *McDonald*, 125 Ill. 2d at 196 (State's use of 16 out of 18 peremptory challenges to strike blacks constituted a "pattern" of strikes against blacks).

The State argues that the evidence was insufficient to establish the number of strikes used by the State to exclude black venirepersons. However, this court has previously found that the sworn testimony of trial counsel at a *Batson* hearing should be considered as evidence of the number of strikes exercised against black venirepersons. (*McDonald*, 125 Ill. 2d at 197-98.) Moreover, in *Andrews I*, this court recognized that defense counsel herein had made a record as to the number of strikes used against black venirepersons in the form of his statement following the original *voir dire*. (*Andrews I*, 132 Ill. 2d at 460.) The State offered *no* evidence to contradict defendant's evidence on this factor. Most significantly, the State offered no objection or correction when defense counsel stated for the record, at the original *voir dire*,

that the State had exercised eight out of eight peremptory challenges against blacks. Had the State disagreed with that number, it should have made its own record as to the "correct" number. We conclude that the evidence was more than sufficient to establish that the State exercised eight out of eight strikes against black venirepersons. The State suggests that defendant should have been required to call the excluded venirepersons to testify at the *Batson* hearing to establish their race. To require a defendant to locate and subpoena excluded venire members in cases such a this, where the *Batson* hearing is conducted years after the trial, would impose an unreasonably onerous burden on the defendant. We find that the contemporaneous making of a record as to the number of black venirepersons excluded, combined with the uncontradicted sworn testimony of trial counsel, is sufficient to establish this number.

The evidence in this case also demonstrated the disproportionate use of strikes by the State against black venire members. The number of blacks stricken compared to the number of nonblacks stricken may reveal whether a disproportionate number of strikes was used to exclude blacks. (See *Evans*, 125 Ill. 2d at 65; *Holman*, 132 Ill. 2d at 176.) Here, 100% of the State's peremptory challenges were exercised against black venire members, with 0% being exercised to exclude nonblack venire members. This huge disparity certainly constitutes the disproportionate use of strikes against black venirepersons.

Thus, the State's use of eight out of eight peremptory challenges to exclude black venirepersons demonstrates both a pattern of strikes, and the disproportionate use of strikes, against black venire members. These two very relevant factors are strongly suggestive of the inference of discrimination required for a *prima facie* case. We are conscious that, in determining whether a *prima facie*

case has been made, a court should consider more than simply the number of black venire members excluded. (*People v. Young* (1989), 128 Ill. 2d 1, 19.) However, the significance of figures such as these cannot be disregarded. A prosecutor's use of 100% of his peremptory challenges to exclude black venirepersons is a factor weighing heavily in favor of a finding that the inference of discrimination was raised. (See *People v. Daniels* (1987), 164 Ill. App. 3d 138 (*prima facie* case established where State used six out of seven peremptory strikes to exclude blacks); *People v. Cannon* (1987), 153 Ill. App. 3d 245 (*prima facie* case established where State used five out of six peremptory strikes to exclude blacks).) However, we are by no means relying on those numbers alone in reaching our determination that a *prima facie* case was established.

The heterogeneity of the peremptorily excluded black venire members is also a circumstance that is highly relevant for *Batson* purposes. (*McDonald*, 125 Ill. 2d at 197.) The excluded venirepersons in this case were a diverse group, with no apparent shared characteristics aside from race distinguishing them from the accepted nonblack jurors. The excluded venire members included five males and three females ranging in age from 26 to 54. Three of the venire members were married, three were divorced, and two were single. Three of the venire members were childless and the others had parented from one to 10 children. Three of the venirepersons owned homes while five rented. Four members of the group had been crime victims themselves, or had crime victims within their family. The other four had never been crime victims nor had any member of their families. The diverse occupations of the eight excluded venire members consisted of plumber, secretary/sales representative, shoe store manager, baker, laid-off lamp polisher, housewife, unemployed welfare recipient, and unem-

ployed truck driver. Thus, the prosecutor's challenges resulted in the exclusion of a group that was " 'as heterogeneous as the community as a whole,' sharing race as their only common characteristic." *McDonald,* 125 Ill. 2d at 197; see also *Harris,* 129 Ill. 2d at 173.

The State argues that the excluded venire members shared characteristics other than race and points to the fact that all eight were or had been engaged in nonprofessional occupations. This is an accurate observation. However, the record reveals that *all* 12 of the venirepersons that were impaneled as jury members were also engaged in nonprofessional occupations. Thus, the lack of professional status was not a common characteristic of the excluded venirepersons that distinguished them from the accepted nonblack jurors. *Cf. Holman,* 132 Ill. 2d at 176 (excluded blacks not a heterogeneous group because three of the four shared a nonracial characteristic that was not shared by the impaneled nonblack jurors); see also *People v. Johnson* (1990), 199 Ill. App. 3d 798, 804 (excluded venirepersons were a heterogeneous group even though several of them shared one characteristic, because this characteristic was also shared by several of the accepted nonblack jurors); but see *People v. Henderson* (1990), 142 Ill. 2d 258, 290 (excluded venirepersons not a heterogeneous group because they shared some characteristics other than race, even though several of the accepted white jurors shared those characteristics as well).

The State also argues that five of the excluded venirepersons had some contact with the legal system; four had been crime victims, or someone in their family had been a crime victim, and one's wife was a legal secretary. The State fails to consider, however, that 6 out of the 12 accepted jurors also had some contact with the legal system; five had been crime victims, or someone in their family had been a crime victim, and one was

a court reporter. Thus, we find that the excluded black venirepersons were a heterogeneous group with race as their only common characteristic distinguishing them from the accepted nonblack jurors.

Furthermore, it is highly significant that the crimes with which defendant was charged were interracial in nature. The racial characteristics of a crime are important factors to be considered by the trial court in determining whether a *prima facie* case has been established. (See *Evans*, 125 Ill. 2d at 66.) Here, defendant is black and the victims were white. In addition, one of the white victims testified as an eyewitness at defendant's trial. The potential for racial discrimination in the selection of a jury is undisputedly heightened where the defendant is black and the victims and the key prosecution witness are white. (See *Henderson*, 142 Ill. 2d at 289.) Thus, the interracial nature of the crimes with which defendant was charged supports the inference that the prosecutors' peremptory challenges were racially motivated.

We conclude that the above factors, in combination, were more than sufficient to raise the inference of discrimination required to establish a *prima facie* case under *Batson*. The evidence presented an interracial crime, a "pattern" of strikes against blacks, the disproportionate use of strikes against blacks, and an excluded group of black venirepersons that was "as heterogeneous as the community as a whole." The trial judge's contrary determination was against the manifest weight of the evidence.

We note that the fact that three black venirepersons were impaneled on defendant's jury, while relevant, is by no means dispositive of this issue. The inquiry in this case is whether the State discriminated against the eight excluded black venirepersons, *not* whether the State failed to discriminate against the three accepted black jurors. *Batson* teaches that the equal protection clause is

violated when the State excludes a black venireperson on the assumption that he will be biased in favor of the defendant simply because of their shared race. (*Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.) Thus, if the State excludes *one* black venireperson on that basis, regardless of how many black venirepersons are *not* excluded, the rule of *Batson* is violated. This court as well has repeatedly recognized that "the exclusion of even just one minority venireperson on account of race is unconstitutional and would require reversal of the conviction below." (*Harris*, 129 Ill. 2d at 175; see also *McDonald*, 125 Ill. 2d at 200.) Thus, the complete exclusion of a racial group is not required for a *prima facie* case to be established under *Batson*. (See *Harris*, 129 Ill. 2d at 173-74 (*prima facie* case established even though two black jurors sat on the defendant's jury); *People v. Mack* (1989), 128 Ill. 2d 231, 238 (*prima facie* case established even though one black juror sat on defendant's jury); *People v. Seals* (1987), 153 Ill. App. 3d 417, 423 (*prima facie* case established despite the presence of one black juror on the defendant's jury); *People v. Chevalier* (1987), 159 Ill. App. 3d 341, 350 (presence of black jurors on the defendant's jury does not insulate the prosecution from a *Batson* claim).) Were this not the rule, prosecutors could immunize themselves from *Batson* claims by allowing one or two minority venirepersons to be impaneled. (*People v. Johnson* (1987), 159 Ill. App. 3d 991, 996.) We thus do not believe that the presence of three black jurors on defendant's jury is sufficient to defeat the *prima facie* case of racial discrimination established by the evidence.

The State points out that defendant failed to establish the number of blacks that were on the jury venire. Therefore, a comparison of that number to the number of blacks impaneled could not be made. It is true that, under this court's precedents, such a comparison is a rel-

evant factor on this issue. (*Evans*, 125 Ill. 2d at 64.) However, we do not believe that the absence of this figure overcomes the strong evidence which weighs in favor of a *prima facie* case. We note that the State does not provide the missing figure and thus cannot contend that the comparison would weigh against a *prima facie* case. Rather, the State argues that the absence of this figure should, by itself, negate a *prima facie* case. We disagree. We find that the absence of evidence on this figure renders it a neutral factor in this determination.

The State further argues that the trial judge's determination that no *prima facie* case was established was sufficiently supported by the judge's observations regarding the character of the prosecutors and his knowledge of "local conditions." This court has recognized that trial judges are " 'familiar with local conditions and prosecutors, and can draw upon [his] power of observation and judicial experience as a guide in distinguishing a true case of discrimination from a false one.' " (*Andrews I*, 132 Ill. 2d at 463, quoting *Evans*, 125 Ill. 2d at 67.) However, as noted, we believe that the trial judge in this case improperly placed far too much emphasis on these considerations to the exclusion of the other relevant factors mandated by this court's precedents. Under the teaching of *Batson*, we cannot hold that the prosecutors' alleged failure to previously act in a discriminatory manner is dispositive of this issue. The Court in *Batson* emphasized that a prosecutor's discriminatory act is not " 'immunized by the absence of such discrimination in the making of other comparable decisions.' " (*Batson*, 476 U.S. at 95, 90 L. Ed. 2d at 87, 106 S. Ct. at 1722, quoting *Village of Arlington Heights v. Metropolitan Housing Development Corp.* (1977), 429 U.S. 252, 266 n.14, 50 L. Ed. 2d 450, 465 n.14, 97 S. Ct. 555, 564 n.14.) With all appropriate deference to the trial judge's findings regarding the "local conditions" and the person-

alities of the prosecutors, we find that his observations were not sufficient to negate the *prima facie* case clearly established by the overwhelming weight of the evidence. We thus hold that defendant established a *prima facie* case of racial discrimination under *Batson*.

Accordingly, for the aforesaid reasons, we reverse the trial court's determination that defendant failed to establish a *prima facie* case of discrimination in the selection of his jury. Pursuant to this court's supervisory authority, we retain jurisdiction and remand this cause to the circuit court of Cook County for a hearing to allow the State to come forward with race-neutral explanations for the use of its peremptory challenges. The trial court shall determine whether the State's explanations are sufficient to rebut defendant's *prima facie* case. The trial court shall make appropriate findings of fact and conclusions of law and shall file those findings and conclusions with the clerk of this court within 60 days of this decision together with a record of the proceedings on remand.

*Circuit court reversed;*
*remanded with directions.*

JUSTICE FREEMAN took no part in the consideration or decision of this case.