THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN HAYES *et al.*, Defendants-Appellants.

First District (6th Division)   Nos. 1—90—3223, 1—91—0687 cons.

Opinion filed March 26, 1993.

Michael J. Pelletier and Ann C. McCallister, both of State Appellate Defender's Office, of Chicago, for appellant Buddy Burton.

Rita A. Fry, Public Defender, of Chicago (Mark Floyd Pasterski, Assistant Public Defender, of counsel), for appellant John Hayes.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Susan Schierl, John E. Gilhooly, Donald T. Lyman, and Bennett E. Kaplan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE EGAN delivered the opinion of the court:

After a jury trial the defendants, Buddy Burton and John Hayes, were convicted of first degree murder. Hayes was sentenced to 35 years' imprisonment, and Burton was sentenced to 31 years' imprisonment.

The defendants appeal separately, but we consolidated the appeals after hearing oral argument in Burton's appeal. We entered an order pursuant to Supreme Court Rule 252(a) (134 Ill. 2d R. 352(a)) that we would consider Hayes' appeal without oral argument. Both defendants maintain that the judge erred in refusing to conduct a hearing during jury selection as required by *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. Burton also maintains that prosecutorial misconduct denied him a fair trial.

Under *Batson*, a defendant is entitled to a hearing if he is able to establish a *prima facie* case of discrimination by the prosecution during jury selection; the defendant must raise the inference that the prosecutor exercised peremptory challenges to remove venire members based upon their race. (*Batson*, 476 U.S. at 93-96, 90 L. Ed. 2d at 85-87, 106 S. Ct. at 1721-22.) The trial judge denied the defendants' motion for a *Batson* hearing after some jurors had been accepted and some rejected. The judge again denied the defendants' motion for a *Batson* hearing after jury selection had been completed. The issue before us, therefore, is whether the trial judge's order denying a *Batson* hearing was against the manifest weight of the evidence. See *People v. Henderson* (1990), 142 Ill. 2d 258, 568 N.E.2d 1234.

■■ In order to establish the *prima facie* requirements for a hearing, the defendant must show that: (1) he belonged to a racial group capable of being singled out for differential treatment; (2) the prosecution removed members of the defendant's race from the venire by using peremptory challenges; and (3) these facts and any other relevant circumstances raise an inference of purposeful discrimination because of race. *Batson*, 476 U.S. at 94-96, 90 L. Ed. 2d at 86-87, 106 S. Ct. at 1722.

The requirement of *Batson* that defendants must show that members of *their* race have been impermissibly excluded was removed by the Supreme Court in *Powers v. Ohio* (1991), 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364. Under the present law, racial identity

between the defendant and excused jurors, although not required, is a relevant factor in determining whether a *prima facie* case of purposeful discrimination has been established. (*People v. Andrews* (1992), 146 Ill. 2d 413, 588 N.E.2d 1126.) In the case before us the defendants, who are black, maintain that the State impermissibly excluded black venirepersons. The immediate question before us, therefore, is whether the defendants have shown any other relevant circumstances raising an inference of purposeful discrimination because of race.

As enunciated by our supreme court these other relevant circumstances include a pattern of strikes against black venirepersons; the prosecutorial questions and statements during *voir dire* examination and while exercising challenges; the disproportionate use of peremptory strikes against blacks; the level of black representation in the venire as compared to the jury; whether the excluded blacks were a heterogeneous group sharing race as their only common characteristic; and the race of the defendant, the victim and witnesses. *Andrews*, 146 Ill. 2d at 426.

■■ A "pattern" of strikes is created "where the strikes affect members of a certain race to such a degree or with such a lack of apparent nonracial motivation that it suggests the possibility of racial motivation." (*Andrews*, 146 Ill. 2d at 429.) In this case the prosecution exercised a total of eight challenges, and seven of those challenges were directed against black venirepersons. One challenge was exercised against an Hispanic. (The Hispanic juror, a woman, is also described as black, but the defendants and the State treat her as a nonblack in their briefs.) No strikes were made against white venirepersons. The State's use of seven of eight peremptory challenges against black venirepersons, therefore, is strongly suggestive of racial motivation and thus constitutes a pattern of strikes against black venirepersons. See *People v. Harris* (1989), 129 Ill. 2d 123, 544 N.E.2d 357 (15 of 20 strikes against blacks constituted a pattern); *People v. McDonald* (1988), 125 Ill. 2d 182, 530 N.E.2d 1351 (16 out of 17 strikes against blacks constituted a pattern); *People v. Daniels* (1987), 164 Ill. App. 3d 138, 517 N.E.2d 626 (six out of seven strikes excluding blacks constituted a pattern); *People v. Cannon* (1987), 153 Ill. App. 3d 245, 505 N.E.2d 1272 (pattern established where State used five out of six strikes to exclude blacks).

For the same reasons we found that the defendants established a pattern against blacks, we find that the record also establishes a disproportionate use of strikes against black venirepersons. Where the numbers reveal a racial imbalance resulting from the use of a disproportionate number of challenges against blacks, those numbers cannot

be ignored and are significantly relevant along with all the other circumstances. (*People v. Lockhart* (1990), 201 Ill. App. 3d 700, 558 N.E.2d 1345.) In determining whether a *prima facie* case has been established, however, the courts "should consider more than simply the number of jurors excluded." (*People v. Young* (1989), 128 Ill. 2d 1, 19, 538 N.E.2d 453, 457.) In other words, although a pattern of strikes and disproportionality of strikes are factors which weigh in the defendants' favor, they are not dispositive. Nonetheless, our supreme court has characterized a pattern of strikes and the disproportionate use of strikes against black venirepersons as "two very relevant factors [which] are strongly suggestive of the inference of discrimination required for a *prima facie* case." *Andrews*, 146 Ill. 2d at 430.

The next factor to be considered is whether the excluded venirepersons were as heterogeneous as the community as a whole, sharing race as their only common characteristic. (See *People v. McDonald* (1988), 125 Ill. 2d 182, 530 N.E.2d 1351; *People v. Kindelan* (1991), 213 Ill. App. 3d 548, 572 N.E.2d 1138.) Before we consider this factor, it is appropriate to address the State's contention that Illinois law does not permit a comparison of the excluded black venirepersons to the accepted nonblack jurors. Although *Batson* does not specifically mention this factor, the Supreme Court gave State courts discretion in formulating relevant factors. (*Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.) Our supreme court established the proper format for analyzing the heterogeneity factor: it first ascertained whether the excluded venirepersons were heterogeneous as a group, except for race. (*Andrews*, 146 Ill. 2d at 431.) As a further step, our supreme court also analyzed whether any of these nonracial characteristics were shared by the accepted nonblack jurors. (*Andrews*, 146 Ill. 2d at 432.) More recently, this court found relevant the fact that excluded blacks did not share any apparent characteristic aside from race which distinguished them significantly from the accepted white jurors. See *People v. Ramirez* (1992), 230 Ill. App. 3d 231, 595 N.E.2d 12.

The defendants emphasize the lack of any shared characteristic among the excluded black venirepersons other than race. The State urges that one characteristic does link the excluded blacks together, regardless of race, and that is that all of the excluded black venirepersons share the common characteristic of having an immediate male family member close in age to the defendant Burton.

The State's claim is not supported by the record. The defendant Burton was 17 years old at the time of the crime and 19 years old at the time of trial. (Hayes was 24 years old at the time of the crime and

26 years old at the time of trial.) Of the seven blacks excluded by the State, only two venirepersons had a male family member close in age to Burton. One of them had two sons in high school and the other had one son in the military and one son in high school. The other five jurors did not share this characteristic. One of them had. four children, but the record does not indicate the gender of the child in high school. The second had four children, but again the record does not indicate the gender of the child in high school. The third had 10 children, but the record does not indicate their ages or genders. The fourth had only one son, who managed a lounge on the south side of Chicago. The last had two children, one employed as an auditor for the City of Chicago and another employed as a clerk for the Chicago Tribune. The record does not indicate the gender of the last excluded juror's children.

A review of other data presented in the *voir dire* shows that the seven excluded venirepersons did not share any apparent characteristic other than race which distinguished them significantly from the accepted nonblack jurors. For instance, four of the excluded venirepersons were divorced, two were married and one was single. Of the accepted nonblack jurors, two were divorced, three were married, two were single and one was widowed.

Of the excluded black venirepersons, five of the seven were employed, ranging in length of employment from 2 to 32 years, and one was a student. The five were employed in a variety of occupations: case manager for the Department of Health; crane operator; manager of a lounge; school community representative for the board of education; and a packer. One of them was a student who was studying to be a computer operator. Of the accepted white jurors, most were employed with similar occupations, such as secretaries, a maintenance man, and a warranty clerk. One white juror was also a student.

Nor is there a major difference in the family life of the excluded blacks and the accepted jurors. Most of the excluded venirepersons had young or grown children and one had no children. Of the accepted jurors, half had young or grown children, three had no children, and no information was given for a divorced juror. Two of the excluded venirepersons experienced arrests either individually or through a member of their family; a son was arrested for breaking into a home and one venireperson was arrested for a weapon in her car. The other five had experienced no arrests. Of the accepted jurors, one had two sons; one of the two was arrested for aggravated assault and the other for reckless homicide.

After reviewing the record, it appears that the only common denominator among the excluded group of venirepersons was that they were all black. The excluded blacks were heterogeneous as a group except for race. Moreover, the excluded blacks shared many characteristics with the accepted nonblack jurors. The heterogeneity of the excluded black venirepersons, when compared to the accepted jurors, raises the inference that the black jurors were excluded on the basis of their race alone. *Andrews*, 146 Ill. 2d at 433.

Another relevant factor is the level of black representation in the venire as a whole as compared to the jury. (*Andrews*, 146 Ill. 2d at 426.) The State points out that the defendant has failed to establish the number of blacks that were on the jury venire. A comparison, therefore, of the entire venire to the number of blacks impaneled cannot be made. This gap in the record, however, does not overcome the strong evidence which weighs in favor of a *prima facie* case. The State failed to provide the missing figure and thus cannot contend that the absence of such evidence would weigh against or negate a *prima facie* case. (We reject the figures used by the State in the Hayes appeal. The State uses the term "venire" to mean the jurors who were questioned.) Consequently, no inference may be drawn either for or against the defendants' argument. See *Ramirez*, 230 Ill. App. 3d at 237.

Another factor is the questions asked by the State of prospective jurors and statements made by the State when exercising challenges. The questioning was done by the trial judge, and the only statements made by the prosecutors when exercising challenges were to thank the jurors. No inference may be drawn favorable to the defendants' argument when considering this factor.

In ruling that a *Batson* hearing was not required, the judge pointed out that there were several black jurors on the jury and that the State had tendered a black juror who was excused by the defense. He also pointed out that the trial judge is in the best position to determine whether discrimination was going on and that it was clear to him that it was not.

After the jury was sworn, the judge again emphasized that there were four blacks on the jury. At the motion for a new trial, the judge again pointed out that the jury consisted of four blacks and that one of the alternates was black. The record also reflects the fact that the judge considered that the victim and the State's principal witness were black.

We recognize the validity of all the observations made by the trial judge. But the observations were similar to those the trial judge had

made in *Andrews*, in which the supreme court held that the judge had improperly emphasized certain facts and had made no reference to other pertinent factors including a pattern of strikes against blacks, a disproportionate use of the State's strikes against blacks and whether the excluded blacks were a heterogeneous group. We point out also that *Ramirez*, which relied on *Andrews*, found that a pattern of strikes, the disproportionate use of strikes against black venirepersons, the heterogeneity of the excused jurors except for race, and the substantial similarity of the excluded blacks and the accepted white jurors outweighed the presence of some blacks on the jury and the fact that the defendant, the victim and several State witnesses were of the same ethnic origin. Based on *Andrews* and *Ramirez*, we believe that the decision of the judge was against the manifest weight of the evidence.

The doctrine first announced in *Batson* is being refined on a case-by-case basis. In fact, it has even been amended by *Powers v. Ohio*, which removed the requirement previously noted in *Batson* that the defendant and the excluded jurors be of the same race. The doctrine has now been extended to civil cases (*Edmonson v. Leesville Concrete Co.* (1991), 500 U.S. 614, 114 L. Ed. 2d 660, 111 S. Ct. 2077), and it has been extended to apply to the defendant's use of peremptory challenges. (*Georgia v. McCollum* (1992), 505 U.S. 42, 120 L. Ed. 2d 33, 112 S. Ct. 2348.) Similarly, *Andrews* is a refinement to the extent that it instructs the trial court on the relative weight of the factors that must be considered. It also teaches that the better practice is for trial judges to make clear on the record that they did consider those factors. Fairness requires that we note that this case was tried before *Andrews* was decided by the supreme court and *Ramirez* by this court. The trial judge did not have the guidance of *Andrews* at the time this case was tried.

After oral argument, the State has cited the additional authority of *People v. Dukes* (1992), 227 Ill. App. 3d 988, 592 N.E.2d 437. We find that *Dukes*, which was decided one month after *Andrews* and does not mention *Andrews*, is not factually controlling. In *Dukes*, the appellate court upheld the trial judge's finding that there was no pattern of strikes against blacks and that the excluded black jurors shared characteristics other than race. Most important, it was clear from the record that the trial judge did consider all relevant factors.

■ The State now attempts to advance reasons justifying the exclusion of the black jurors. This court is not the proper forum to make that initial determination. We therefore remand the case to the circuit court for a hearing to allow the State to come forward with race-neu-

tral explanations for the use of its peremptory challenges. The trial court shall determine whether the State's explanations are sufficient to rebut the defendants' *prima facie* case.

This court will withhold disposition of Burton's other claims of prosecutorial misconduct and retain jurisdiction to consider them after the *Batson* proceedings. See *People v. Garrett* (1990), 139 Ill. 2d 189, 564 N.E. 784.

Judgment reversed and remanded with directions.

McNAMARA, P.J., and RAKOWSKI, J., concur.