2023 IL App (2d) 210281-B-U
No. 2-21-0281
Order filed October 24, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-714 |
| RAHSHAN D. DUFFIE, | ) ) ) | Honorable Robert A. Wilbrandt., and James S. Cowlin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: Following a second remand for the trial court to comply with *Batson v. Kentucky*, we affirm the trial court's finding that defendant failed to establish a *prima facie* case that the State was motivated by race in making a peremptory challenge to the sole African American venireperson, who said during *voir dire* that, in his former position as a national bank examiner, he would determine whether a violation of banking laws was intentional before deciding the appropriate sanction.

¶ 2    In an earlier appeal in this case, we entered a limited remand for proceedings pursuant to

*Batson v. Kentucky*, 476 U.S. 79 (1986), to determine whether the State's use of a peremptory

challenge against an African American prospective juror violated the equal protection clause of

the fourteenth amendment (U.S. Const., amend. XIV). We retained jurisdiction to review the trial court's decision on remand. *People v. Duffie*, 2022 IL App (2d) 210281 (*Duffie I*). Following the proceedings on remand, we concluded that further proceedings were necessary. Accordingly, we entered an order remanding the case for a second time. Again, we retained jurisdiction to review the trial court's decision on remand. On the second remand, the trial court concluded, as it had initially and on the first remand, that no equal protection violation occurred. We affirm.

¶ 3                                I. BACKGROUND

¶ 4     Following a jury trial in the circuit court of McHenry County, defendant, Rahshan D. Duffie, was convicted of escape (730 ILCS 5/5-8A-4.1(a) (West 2020)). Evidence at trial showed that defendant violated the terms of his pretrial release in case No. 20-CF-243 by removing an electronic monitoring device from his ankle.

¶ 5     In the interests of efficiency and consistency, we excerpt our earlier opinion's description of the relevant events during jury selection:

> "During jury selection, the prosecutor questioned prospective juror Travis Wilbert, a retired national bank examiner, about his former occupation. Wilbert indicated that his position entailed knowledge and application of banking laws. Asked whether he would describe himself as 'more of an analytical person or common sense person,' Wilbert responded, 'I'm both.' Wilbert elaborated:
>
> '[W]ithin my position, I had to use common sense as well with the laws there can be some gray areas, and working with clients, so you have to use common sense, but then also have to be analytical to identify where a violation of the law has occurred.'
>
> The prosecutor asked whether there were times when Wilbert 'had to take all these different factors into play to determine whether a violation occurred.' Wilbert responded:

'Definitely had to take a lot of things into play. I mean ***, the violation of law was there. What was—you know, did you intentionally violate the law or was it over, you know, something you overlooked that caused the violation of law; so those type of, you know, reasoning, thought process entered into things.'

The prosecutor exercised a peremptory challenge against Wilbert. The trial court interjected, 'You need a *Batson* reason on Mr. Wilbert.' The prosecutor responded that her concerns arose from Wilbert's answers to questions about the role of the law in his former occupation of bank examiner. The prosecutor explained:

'Judge, his answer to the question the law he applied in bank cases, where someone could commit a technical violation, but he said that like even if it's a technical violation, he has to look at all the surrounding circumstances and that causes me concern because we want somebody who is going to follow the law exactly as it is, not consider, you know, well, it wasn't that big of a violation.

And I think that the factors that he applied in his job are very different from what we apply here. He is familiar with the bank law and federal and state law, so that was— that was the concern that we had and the reason that we would be asking to strike him.'

Defense counsel objected to the challenge, stating, '[T]he [S]tate doesn't like [Wilbert] because they think he will be favorable to my client and I don't think it's for good reasons. I think it's—the reasons are suspicious.' Defense counsel added that Wilbert was 'the only person of color in this courtroom.' The trial court allowed the State's peremptory challenge, stating, 'The court believes that the [S]tate has a reason that would comply with *Batson*.' " *Duffie I*, 2022 IL App 210281, ¶¶ 4-7.

¶ 6 In *Duffie I*, we explained the process for determining whether the use of a peremptory challenge runs afoul of the fourteenth amendment:

"In *Batson*, the United States Supreme Court held that the equal protection clause of the fourteenth amendment (U.S. Const., amend. XIV) forbids prosecutors from exercising peremptory challenges to potential jurors solely on account of their race. [Citation.] *Batson* developed a three-step process for determining whether a peremptory challenge violates that principle. 'First, the defendant must make a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race.' [Citation.] 'To determine at the first step whether racial bias motivated a prosecutor's decision to remove a potential juror, a court must consider the totality of the relevant facts and all relevant circumstances surrounding the peremptory strike to see if they give rise to a discriminatory purpose.' [Citation.]" *Id.* ¶ 22.

We further observed that if a *prima facie* case is established, the second step of the process requires the State to offer a race-neutral explanation for the use of the peremptory challenge, and the defendant is afforded the opportunity to show that the State's explanation is pretextual. *Id.* ¶ 23. In the third step, the trial court determines whether the defendant has established purposeful discrimination. *Id.*

¶ 7 We concluded that the trial court failed to follow the three-step process and, thus, a remand for further proceedings conforming to *Batson* was necessary. *Id.* ¶¶ 27-29. As noted, we retained jurisdiction to review the trial court's decision on remand. *Id.* ¶ 29.

¶ 8 Before the case was remanded, the original trial judge retired, so a new judge, James S. Cowlin, presided over the proceedings on remand. Judge Cowlin filed a written decision finding that defendant made no *prima facie* showing that the prosecutor's peremptory challenge against

Wilbert was based on his race and, thus, there was no reason to consider the matter further. The parties filed supplemental appellate briefs. Defendant contended that the proceedings on remand were inadequate because the parties were not given an opportunity to develop an adequate record for review of defendant's *Batson* claim. We entered an order remanding the case again for (1) a hearing entailing "the presentation and admission of evidence, arguments thereon, and the records created in the original cause and on the first remand," and (2) findings and conclusions by the trial court. We again retained jurisdiction to review the trial court's decision.

¶ 9    On remand, it was stipulated that Wilbert was one of approximately 30 prospective jurors and that he was the only African American among them. It was also stipulated that defendant was African American; that one witness at trial was African American, one was Caucasian, and two were Hispanic; and that Mary Ann Scholl, the prosecutor who exercised the peremptory challenge against defendant, was Caucasian. Defense counsel proffered an affidavit from Wilbert indicating that his immediate reaction to being peremptorily challenged was that the challenge was based on his race. Counsel also presented his own affidavit, in which he averred that he "[had] previously been asked by the State when defending an African American client if [he] intended 'to play the race card?' "

¶ 10    The State advised the trial court that Scholl was leaving town and would be unavailable to provide a race-neutral explanation of the challenge in the event the trial court were to find a *prima facie* case that the challenge was based on race. Accordingly, the State asked to proffer Scholl's oral statement of her reasons for challenging Wilbert.[1] Scholl then advised the trial court

---

[1]We note that defendant has not argued that the proffer relieved him of the obligation to make a *prima facie* showing that Wilbert was challenged based on his race.

that she was concerned that Wilbert indicated that, in his work as a bank examiner, he had to determine whether a violation of banking laws was intentional before determining what consequences would follow. Scholl indicated that she was concerned that Wilbert might improperly consider defendant's reason for removing the electronic monitoring device from his ankle. Scholl added that she similarly exercised a peremptory challenge against another prospective juror, a teacher, who indicated that she looked at all the surrounding circumstances when determining how to respond to student misconduct.

¶ 11 At the hearing, defendant was given the opportunity to present evidence and had an opportunity to be heard. Following the hearing, the trial court issued written findings of fact. The trial court again found no *prima facie* showing that Wilbert was challenged based on his race. Anticipating the possibility that we might conclude otherwise, the trial court added that Scholl had offered a race-neutral explanation and that it was not pretextual.

¶ 12                                    II. ANALYSIS

¶ 13 We initially note that, in this case, the trial court initiated a *Batson* inquiry *sua sponte* during jury selection. In such cases, "the court's findings of fact, including any specific observations of record bearing upon demeanor or credibility, will be accorded the deference the manifest weight standard provides; however, the ultimate legal determination based upon those findings is a legal determination we will make *de novo*." *People v. Rivera*, 227 Ill. 2d 1, 11-12 (2007).

¶ 14 Defendant argues that the trial court erred in finding that the prosecutor's peremptory challenge against Wilbert was not based on his race. In *People v. Rivera*, 221 Ill. 2d 481, 501 (2006) (quoting *People v. Williams*, 173 Ill.2d 48, 71 (1996)), our supreme court explained that,

when deciding whether a party has established a *prima facie* case, the trial court should consider the following factors:

> " '(1) racial identity between the [party exercising the peremptory challenge] and the excluded venirepersons; (2) a pattern of strikes against African-American venirepersons; (3) a disproportionate use of peremptory challenges against African-American venirepersons; (4) the level of African-American representation in the venire as compared to the jury; (5) the prosecutor's questions and statements [of the challenging party] during *voir dire* examination and while exercising peremptory challenges; (6) whether the excluded African-American venirepersons were a heterogeneous group sharing race as their only common characteristic; and (7) the race of the defendant, victim, and witnesses.' "

We note that it was the *Rivera* court that supplied the bracketed language in the first factor. Actually, *Williams* framed the first factor as the "racial identity between the *defendant* and the excluded venirepersons." (Emphasis added.) *Williams*, 173 Ill. 2d at 71.

¶ 15     The trial court, applying the first factor as *Williams* framed it, found that this factor favored defendant because he and Wilbert were both African American. The State does not challenge this finding. The trial court found that the second factor—whether there was a pattern of strikes against African American venirepersons—favored the State. Defendant correctly argues that, because there was only one African American venireperson, this factor is irrelevant. See *People v. Davis*, 345 Ill. App. 3d 901, 910 (2004).

¶ 16     Defendant also argues that the trial court erred in finding that the third and fifth factors favored the State. In addition, defendant argues that the trial court incorrectly found that the fourth factor was neutral; defendant contends that that factor favors him. We disagree.

¶ 17    The third factor is whether there was a disproportionate use of peremptory challenges against African American venirepersons.  Defendant argues that, because Wilbert was the only African American on the venire, the State used peremptory challenges against 100% of the African American venirepersons.  However, this factor does not consider the percentage of African American prospective jurors challenged by the State, but what proportion of the State's challenges were used against African Americans.  See *Williams*, 173 Ill. 2d at 73 ("Comparing the number of African-American and non-African-American venirepersons stricken by the State reveals whether the State used a disproportionate number of peremptory challenges to exclude African-Americans.")  In *Williams*, where the State challenged one African American venireperson and one Caucasian venireperson, the supreme court found that the State's peremptory challenges were not used disproportionately against African Americans.  *Id.*  Here, the State used peremptory challenges against six prospective jurors and one prospective alternate juror.  The State's use of only one peremptory challenge out of seven against an African American prospective juror was not disproportionate.

¶ 18    The fourth factor is the level of African American representation in the venire as compared to the jury.  "The factor of venire representation involves, *** comparing the proportion of accepted jurors who are members of the relevant racial group to the proportion of the venire who are members of the relevant racial group." *People v. Jones*, 2021 IL App (1st) 181266, ¶ 43.  Here, there is no dispute that there were about 30 individuals on the venire.  The proportion of African Americans accepted as jurors on the jury was zero.  The proportion of African Americans on the venire was .033 (one out of thirty).  This insignificant discrepancy warrants the trial court's finding that the fourth factor was neutral.

¶ 19    The fifth factor is the prosecutor's questions and statements during *voir dire* examination and while exercising peremptory challenges. Defendant argues that some jurors were asked fewer questions than Wilbert and that only three jurors were asked whether they considered themselves analytical or commonsense thinkers. According to defendant, "[c]onsidering the State's reasoning for dismissing Wilbert, this discrepancy is significant." {Appellant's Second Supp. Brief p. 20} Defendant's approach is wrong. When a *Batson* hearing is conducted properly, the State is under no obligation to explain its use of a peremptory challenge until the defendant has made a *prima facie* case of discrimination; thus, it is inappropriate here to consider the State's reasoning in determining whether defendant made a *prima facie* case. We find nothing in the questioning of Wilbert, viewed either in isolation or in comparison to the questioning of other prospective jurors, to suggest purposeful discrimination. The trial court did not err in finding that this factor favored the State.

¶ 20    The trial court found that the sixth factor—whether the excluded African American venirepersons were a heterogeneous group sharing race as their only common characteristic—did not apply because Wilbert was the only African American venireperson. Also, the court found that the seventh factor—the race of the defendant, victim, and witnesses—slightly favored the State. Defendant does not challenge either of these findings.

¶ 21    Defendant cites the supreme court's comment in *People v. Andrews*, 146 Ill. 2d 413, 427 (1992), that "[a] trial judge's experience with local prosecutors and knowledge of local conditions are relevant factors in a *prima facie* case analysis." He claims that, under *Andrews*, there was similar relevance in his counsel's affidavit stating that, during his previous representation of an African American defendant, the State asked whether counsel would " 'play the race card.' " Defendant argues, in essence, that the term "race card" has racist overtones because it discounts

the existence of racism in society. The argument is flawed because it equates the trial court's experience with local prosecutors with defendant's experience. Moreover, defense counsel never indicated that the prosecutors in this case had ever brought up the "race card."

¶ 22 Finally, we note that defendant cites decisions from other jurisdictions holding that striking the only African American venireperson is alone sufficient to establish a *prima facie* case. Suffice it to say that we are not bound by decisions from other jurisdictions.

¶ 23 In view of the foregoing, we find no basis to disturb the trial court's conclusion that defendant failed to make a *prima facie* showing that the prosecutor's peremptory challenge against Wilbert was based on his race. Because we uphold that conclusion, we need not consider whether the State gave a race-neutral explanation for the peremptory challenge or whether the explanation was pretextual.

¶ 24                                             III. CONCLUSION

¶ 25 For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 26 Affirmed.