(No. 69570.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHNNY GARRETT, Appellee.

*Opinion filed November 21, 1990.*

Neil F. Hartigan, Attorney General, of Springfield, and Cecil A. Partee, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chi-

cago, and Renee Goldfarb, Assistant State's Attorney, and Marilyn Schlesinger, Special Assistant State's Attorney, of counsel), for the People.

Randolph N. Stone, Public Defender, of Chicago (Mark Stein, Assistant Public Defender, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

. This cause presents questions of appellate procedure and of substance regarding *Batson* hearings, which are designed to ascertain whether purposeful racial discrimination in jury selection has been practiced by the State. See *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.

Following a jury trial in the circuit court of Cook County, defendant, Johnny Garrett, was convicted of criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(1)) and sentenced to an extended term of 16 years' imprisonment. After the jury was sworn, defendant, citing *Batson*, had moved to "strike" it on the ground that the State exercised six of seven peremptory challenges against black venirepersons. The trial court had then denied the motion. Our review of the record on appeal reveals indications, such as the State's argument at the *Batson* hearing and defendant's arrest report, that defendant is black; the parties do not dispute defendant's race, though defendant's brief never expressly avers it.

On appeal, the appellate court affirmed defendant's conviction and sentence in all respects except as to the trial court's ruling on the *Batson* issue. On that issue, the appellate court remanded with directions for a hearing "on the present record and any additional record the

parties decide to make." 188 Ill. App. 3d 1107 (unpublished order under Supreme Court Rule 23).

Under the directions of the appellate court (which cited *People v. Colley* (1988), 173 Ill. App. 3d 798, 813-14, as precedent), the trial court was to "confirm" defendant's conviction and sentence if the trial court found that the State did not purposefully discriminate; however, if the trial court found to the contrary, the trial court was to order a new trial. We then granted the State's petition for leave to appeal (107 Ill. 2d R. 315(a)).

## I. JURISDICTION

Before addressing the substantive *Batson* issues in this cause, we must illuminate an appellate procedural point. The appellate court's choice of procedure in disposing of this case is traceable through *Colley* and two other cases to an Iowa Supreme Court ancestor. (See *People v. Johnson* (1987), 159 Ill. App. 3d 991; *People v. Johnson* (1986), 148 Ill. App. 3d 163, *appeal after remand* (1990), 199 Ill. App. 3d 798; *Saadiq v. State* (Iowa 1986), 387 N.W.2d 315.) However, there was a crucial difference in the Iowa court's mode of disposition: That court specified the respective rights of appeal that the parties would have after proceedings in the lower court on remand. (See *Saadiq*, 387 N.W.2d at 329.) Our appellate court in the present cause and in the cited Illinois cases omitted any such specification—and properly so, since our appellate court does not possess this court's or the Iowa Supreme Court's rulemaking or supervisory powers. (See Ill. Const. 1970, art. VI, §§4(b), (c), 6, 16; *People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62; *People v. Krison* (1978), 63 Ill. App. 3d 531, 537; *People v. Marotta* (1971), 3 Ill. App. 3d 280; *People v. Kennedy* (1968), 101 Ill. App. 2d 91, 95, *aff'd* (1969), 43 Ill. 2d 200; Iowa Const., art. V, §4; Iowa Code Ann. §§602.1201, 602.4102, 602.4201 (West 1988).) The result,

however, was to leave the issue of post-remand appellate procedure murky.

An example of further murkiness, outside the cited chain of cases, can be found in *People v. Harris* (1989), 182 Ill. App. 3d 114, 119, 121, where the main body of the opinion stated that the circuit court judgment would "be deemed affirmed" if no discrimination were found on remand and if no further review were sought in the appellate court, but that a new trial was to be ordered if discrimination were found, while the final paragraph stated simply that the circuit court judgment had been "affirmed in part and remanded with instructions." See also *People v. Whaley* (1989), 184 Ill. App. 3d 459, 464, 466 (if discrimination found on remand, judgment and sentence "are vacated" and new trial ordered; otherwise, judgment and sentence "are affirmed"); *People v. Mays* (1988), 176 Ill. App. 3d 1027, 1046; *People v. McNeal* (1987), 160 Ill. App. 3d 796, 806.

Such methods of disposing of a cause in the appellate court may leave the parties to wonder when the time for appeal begins and ends, to and from which court an appeal should be taken, and on what issues. Unnecessary questions are raised regarding when and by what court an appealable judgment on one or more issues is to be considered as having been entered. In addition, contradictory statements of the court's judgment are fostered.

It would have been preferable if the appellate court in the present cause had simply retained jurisdiction while remanding for a *Batson* hearing, as this court did when deciding *People v. Hooper* (1987), 118 Ill. 2d 244, and while considering *People v. Hope* (1990), 137 Ill. 2d 430. Technically, this court disposed of *Hooper* and the original *Batson* question in *Hope* by supervisory order, which, of course, is a type of order that only the supreme court is empowered to enter as such (see Ill. Const. 1970, art. VI, §16); but, just as the appellate court is empowered in

civil appeals under our Rule 366(a)(5) (107 Ill. 2d R. 366(a)(5)) to "make any other and further orders *** that the case may require," so is the appellate court empowered in criminal appeals by Rule 615(b)(2) to "modify" any "proceedings subsequent to *or dependent upon* the judgment or order from which the appeal is taken." (Emphasis added.) (107 Ill. 2d R. 615(b)(2).) Here, for purposes of Rule 615(b)(2), the appeal to the appellate court was taken from the trial court's order that denied defendant's motion to strike the jury; necessarily, the trial court's original hearing on defendant's motion was not "subsequent to" the denial order, but the correctness of the manner of conducting the hearing was, in the sense of Rule 615(b)(2), "dependent upon" the correctness of that order. (See also Ill. Rev. Stat. 1989, ch. 37, par. 33 (stating that appellate court has "all power and authority necessary to carry into complete execution all its judgments and determinations in all matters within its jurisdiction").) The appellate court is empowered under Rule 615(b) to remand a cause for a hearing on a particular matter while retaining jurisdiction. (See also 5B C.J.S. *Appeal & Error* §1836 (1958) (reviewing court may, without decision, remand cause to permit further evidence, to determine issues or questions, or to make findings).) Therefore, in practical terms, the appellate court could have emulated the *Hooper* and *Hope* procedure. Then, after *Batson* proceedings on remand had been completed and any supplementary appellate issues had been briefed and argued, the appellate court could have announced its judgment on all pending issues.

In fact, the appellate court in *People v. Jones* (1988), 177 Ill. App. 3d 663, employed the correct procedure when it remanded on a *Batson* issue while withholding decision on a sentencing issue and retaining jurisdiction. When it later resumed consideration of the case, the court affirmed on the sentencing issue and on two addi-

tional *Batson* issues that were raised after the hearing on remand. *People v. Jones* (1989), 185 Ill. App. 3d 208; see also *People v. Allen* (1987), 168 Ill. App. 3d 397 (similar disposition).

Had the appellate court followed the *Jones-Allen* procedure in the present cause, there would be no appeal here, if at all, until the *Batson* hearing had been held and the appellate court had entered a final judgment on all issues. In addition, the timetable and avenue for further review would have been clearcut, and this court's docket might have been less burdened.

Still, despite the inconclusive nature of the appellate court's judgment, we are satisfied that we have jurisdiction of this cause. Our rules contemplate review of interlocutory judgments—as in the present appeal, which involves only the remand portion of the appellate court's judgment—even though such review is not favored. (107 Ill. 2d Rules 315(a), 318(b), 612(b); *cf. People v. Breen* (1976), 62 Ill. 2d 323, 326 (when case was appropriate for exercise of supervisory authority, finality of order from which appeal was sought did not need to be considered).) Continuing uncertainties in *Batson* law justify our exercise of jurisdiction here. We turn now to the *Batson* issue itself.

## II. *BATSON* ISSUE

The State contends that the appellate court erred in remanding the cause and that the trial court was correct in denying defendant's motion to dismiss the jury, because that denial was supported by a record that discloses a failure by defendant to establish a *prima facie* case under *Batson*. In order to assess this contention, we shall first review the relevant facts of *voir dire* and the *Batson* claim as they appear from the trial court record and then describe in more detail than previously the appellate court's decision on the *Batson* issue.

## A. Trial Court Proceedings

At trial, the prosecution and the defense were each allotted seven peremptory challenges of prospective jurors and one additional challenge for use against prospective alternate jurors. (See 107 Ill. 2d R. 434(d).) Immediately after all the jurors had been selected and sworn (in panels of four) and two alternate jurors had been selected and sworn—"while everything is fresh on our minds," in the words of the trial judge—defense counsel cited *Batson* and moved to dismiss the jury on the ground that, out of seven peremptory challenges that he said had been exercised by the State against prospective jurors, six had been exercised against black persons. While arguing his motion, defense counsel specified only five black members of the venire as having been the objects of such State peremptory challenges. Except for citing the race of the peremptorily challenged black venirepersons, defense counsel pointed to no other circumstances that might support a *prima facie* case of racial discrimination.

In response, the prosecutor said that the State had peremptorily challenged only six venire members, five of them black and one white. He added that defense counsel himself had peremptorily challenged three black members whom the State had accepted as jurors and that the jury as sworn contained black jurors. The prosecutor also argued that the case was devoid of racial implications, because both defendant and victim were black.

Defense counsel volunteered reasons for his own peremptory challenges of black venire members but insisted that it was the State's obligation, not defendant's, to explain any pattern in peremptory challenges of black persons. The trial judge observed that, besides three black venire members who he said had actually been

sworn as jurors, the State had tendered three others who were black. The judge then asked the prosecutor, "Do you want to say anything about any of your challenges?"

The prosecutor replied by explaining three of her peremptory challenges of black venire members, as follows. One challenge was exercised against a man who was in the middle of school examinations and who therefore would not pay attention but would rush to verdict. Another challenge was exercised against a man who had been accused of a theft 11 years earlier, and she did not want a juror who would be prejudiced against the State. A third challenge was exercised against a man who was single and unemployed and whose brother had incorrectly completed part of the man's juror information card by supplying information pertaining to the brother rather than to the venire member; she did not want "those kind of people" on the jury. The transcript suggests that, while explaining this third challenge, the prosecutor began to describe a fourth challenge but was interrupted by a comment from the trial judge.

After hearing these explanations, the trial judge denied defense counsel's motion without elaboration.

The record on appeal reveals no contradiction of (1) the prosecutor's and trial judge's statements that the jury as sworn contained three black jurors and that defense counsel himself had peremptorily challenged three black venire members, or (2) the prosecutor's statement that, with regard to prospective jurors, she had challenged only one white and five black venire members rather than the six black prospective jurors whom defense counsel at first said she had challenged.

The record reveals that defense counsel exercised all seven of his allotted peremptory challenges. In addition, the prosecution and the defense exercised one peremptory challenge each against prospective alternate jurors.

However, because the racial identities of prospective and sworn alternate jurors are not revealed by the record and have not been put in issue by the parties, we shall not consider them further.

Thus, we accept the following count as accurate: Of the six prospective jurors challenged by the State, five were black (83%); of the seven prospective jurors challenged by the defense, three were black (43%); and of the 12 sworn jurors, three were black (25%).

## B. Appellate Court Decision

The appellate court implicitly found that the record of venire members' race was sufficient for review and that defendant had established a *prima facie* case of purposeful discrimination under *Batson.* The court next characterized as race-neutral the State's explanations for three of its challenges but then stated that one of those explanations (that a venire member was single and unemployed) "would not appear to be" race-neutral if white venire members who were single and unemployed were not likewise challenged. The appellate court said that the inaccuracy of that venire member's juror card did not "buttress the State's explanation" and that the prosecutor's statement that she did not want "those kind of people" was not sufficiently explained. In addition, the appellate court noted the lack of explanation for the State's exercising its two other challenges of black venire members.

The appellate court concluded that, on the basis of "the unique set of facts relating to the *Batson* issue" (citing *People v. Colley* (1988), 173 Ill. App. 3d 798, 808), a proper *Batson* hearing had not been conducted and a remand should be ordered. Therefore, while affirming the circuit court in all other respects, the appellate court remanded the cause with respect to the *Batson* issue for a hearing "on the present record and any additional rec-

ord the parties decide to make for the purpose of determining whether *** the State engaged in purposeful racial discrimination in exercising its peremptory challenges."

## C. Analysis of State Contention

The appellate court's remand order was apparently for the purpose of securing additional evidence regarding accepted and rejected venire members' races and the bases for peremptory challenges so that the State's explanations for exercising its peremptory challenges might be adequately evaluated. However, the only evidence cited by defense counsel in his *prima facie* submission pertained to the race and number of the excluded black venire members; he pointed to no other circumstances arguably showing purposeful State discrimination. Unless defendant is now to be given an opportunity to supplement his *prima facie* submission—as, for example, might be done if the trial judge had improperly limited the submission—additional evidence of venire members' races or other matters might now be relevant only if it were first found that defendant had established a *prima facie* case that required the State to offer neutral explanations for its challenges (see *People v. Harris* (1989), 129 Ill. 2d 123, 174). In that event, additional evidence of venire members' races or other matters might assist in evaluating the State's explanations. (See *Hope*, 137 Ill. 2d at 456 (*Batson* procedure should be methodical and step-by-step).) Hence, the propriety of remanding to secure such evidence depends on whether defendant established a *prima facie Batson* case so as to require neutral State explanations.

A trial court's determination that a defendant has failed to establish a *prima facie* case of purposeful discrimination is a finding of fact and will not be overturned on review unless it is found to be against the

manifest weight of the evidence. (*People v. Brisbon* (1989), 129 Ill. 2d 200, 231.) A preliminary question here is whether the trial court found that defendant had failed to establish a *prima facie* case under *Batson* or whether, on the contrary, the court first found that defendant had established a *prima facie* case, then proceeded to hear neutral explanations by the State, and then ultimately found that no purposeful discrimination had been proved.

In *Hope*, we cautioned trial courts against collapsing what ought to be a methodical *Batson* hearing procedure into an undifferentiated review of defense and State contentions. (*Hope*, 137 Ill. 2d at 456.) If the State were allowed to interrupt the *prima facie* hearing stage by obtaining judicial consideration of its explanations even though they would be insufficient to overcome an already established *prima facie* case, those explanations would constitute a thumb on the scales that weigh the *prima facie* submission, which would undermine the very concept of a *prima facie* case as outlined in *Batson*. (*Hope*, 137 Ill. 2d at 456, 459.) However, the present cause arose prior to our decision in *Hope*.

Under some authorities, we could regard the trial court's invitation for State explanations as creating a presumption that defendant had first established a *prima facie* case; if so, we should then have to determine whether the State's proffered neutral explanations had sufficiently rebutted that case. (See *Hope*, 137 Ill. 2d at 460 (collecting cases). But *cf. People v. Mahaffey* (1989), 128 Ill. 2d 388, 414 (*prima facie Batson* case was not established by fact that court, relying on pre-*Batson* case law, invited State explanations after defendant had cited State exclusion of all seven black venire members who remained after challenges for cause but whose comparative heterogeneity court analyzed).) *Hope* did not resort to the presumption of a *prima facie* case, because

the trial court had expressly, though tardily, articulated a finding of no *prima facie* case, and this court was able to evaluate that finding on its merits. *Hope*, 137 Ill. 2d at 460.

We need not apply any presumption of a *prima facie* case in the present cause. Though the trial court articulated no such finding as in *Hope*, the present cause's *Batson* posture resembles that of *People v. Brisbon* (1989), 129 Ill. 2d 200, in which we observed that the trial court had "conducted what might be called a consolidated proceeding" by apparently considering the entire record and the State's explanations as well as the defendant's submission when deciding that no *prima facie* case had been established. (*Brisbon*, 129 Ill. 2d at 231.) Rather than approve of the "consolidated" procedure, we decided *Brisbon* on the basis of "our own evaluation of *objective* evidence relevant to whether a *prima facie* case had been established, not on evaluation of the State's explanations." (Emphasis in original.) *Hope*, 137 Ill. 2d at 458.

In contrast to the *Hope* and *Brisbon* trial judges, the trial judge at the *Batson* hearing in the present cause never expressly found whether defendant had established a *prima facie* case. He merely denied defendant's motion to strike the jury. However, because of the hearing's resemblance to that in *Brisbon*, and despite the fact that the hearing was not the methodical one later prescribed in *Hope*, we feel it appropriate to make an objective review of the record, ignoring the State's proffered explanations, in order to determine whether the trial judge as fact finder could reasonably have found, by applying the law, that defendant's submission established a *prima facie Batson* case. If not, there will be no need to assess the sufficiency of the State's explanations, since the burden of providing them rests on the State only after a defendant has made a *prima facie* case. See

*Batson,* 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723; *Hope,* 137 Ill. 2d at 453-54; *Harris,* 129 Ill. 2d at 174.

A *prima facie* case of purposeful racial discrimination in jury selection can be established by relying on the fact that peremptory challenges facilitate discrimination and by showing that (1) the defendant belongs to a cognizable racial group, (2) the State peremptorily challenged venire members who belonged to that group, and (3) these facts "and any other relevant circumstances raise an inference" of purposeful racial discrimination. (*Hope,* 137 Ill. 2d at 452, citing *Batson,* 476 U.S. at 93-96, 90 L. Ed. 2d at 85-88, 106 S. Ct. at 1721-23.) However, as a general rule, the mere number of black venire members peremptorily challenged, without more, will not establish a *prima facie* case of discrimination. *People v. Mahaffey* (1989), 128 Ill. 2d 388, 413-14.

In support of his motion to strike the jury, defense counsel in the present cause cited the number and names of black venire members who had been peremptorily challenged by the State. This identification of challenged black venire members was clearly sufficient to establish all elements of a *Batson prima facie* case except perhaps the critical, last element: whether these facts "and any other relevant circumstances" raise an inference of purposeful discrimination.

Among many possible "relevant circumstances" may be a pattern of strikes against black venire members; the disproportionate use of strikes against such members; the level of black representation in the venire as compared to the jury; prosecutorial questions and statements during *voir dire* and while exercising challenges; and the races of defendant and victim or of defendant and witnesses. *Hope,* 137 Ill. 2d at 453.

Here, to supplement his citation of black venire members challenged by the State, defense counsel explained

the reasons for his own challenges of black venire members, though he correctly acknowledged that he was under no obligation to offer such explanations. In fact, explaining his own challenges of black venire members was irrelevant to establishing a *prima facie* case of purposeful racial discrimination by the State. Except for this irrelevant explanation, defense counsel failed to supplement his *prima facie* submission.

Prior to denying defendant's motion, the trial judge noted that the State had tendered three black venire members to the defense, which had then peremptorily challenged them, and that another three venire members had become jurors after being accepted by both the State and the defense. The judge then asked the prosecutor, "Do you want to say anything about any of your challenges?" and the prosecutor responded by explaining three of them on seemingly race-neutral grounds. As already explained, however, for present purposes we shall disregard these State explanations as being irrelevant to defendant's *prima facie* burden. Thus, to assess whether that burden was sustained, we are left with defense counsel's (relevant) list of black venire members challenged by the State and his (irrelevant) explanations of his own challenges to black venire members.

Defense counsel's submission was simply insufficient for the trial judge reasonably to find that a *prima facie* *Batson* case had been established. The mere fact that some black venire members are challenged and others accepted by the State, without more, cannot be said to constitute even a pattern of such challenges. Much less can any actual disproportion in challenges or in representation be shown without evidence that the State challenged black venire members disproportionately as compared to white members, or that the level of black representation in the venire exceeded that in the jury, and defense counsel here offered no such evidence. No

prosecutorial statements or questions during *voir dire* were cited by defense counsel as implying purposeful racial discrimination, and on a careful review of the record we can find none that could reasonably be said to have raised such an inference. Defendant and the victim were both black, according to the State's undisputed argument at the *Batson* hearing, and there is no evidence that the witnesses differed racially from defendant; thus, two more possible bases for inferring purposeful racial discrimination by the State in jury selection are weakened or eliminated. Finally, the trial judge relied partly on his own observation as to the number of black jurors, the number of black venire members challenged by the defense and by the prosecution, and the characteristics of those members challenged by the State. On reviewing the record, we do not feel that any circumstances revealed in it or cited at the *Batson* hearing would be seen by a reasonable trial judge as raising a *prima facie* inference of State discrimination.

Because defendant, as a matter of law, failed to establish a *prima facie* case of purposeful State racial discrimination upon being given full opportunity to do so at a time when *Batson* had already been decided, there was no reversible *Batson* error here, and there is no occasion to remand this cause "for a proper *Batson* hearing," as the appellate court ordered. It would indeed have been improper for the trial court, at the *prima facie* stage of the *Batson* hearing, to weigh the explanations the State offered then for three of its challenges. (See *Hope*, 137 Ill. 2d at 456-60.) Moreover, one or more of these explanations, or one or more of the additional explanations suggested in the State's brief as justifications for its other challenges, might well have been insufficient if offered to rebut an already established *prima facie* case. (See *People v. Harris* (1989), 129 Ill. 2d 123, 175 (exclusion of even one minority venireperson because of race is

unconstitutional).) However, it is apparent from the record that, regardless of the State's explanations, defendant's *prima facie* submission was inadequate, and the trial court's denial of his motion to strike the jury was in accord with the manifest weight of the evidence.

## III. CONCLUSION

For the foregoing reasons, the judgment of the appellate court is reversed insofar as it remanded this cause to the circuit court and such remand was interlocutorily appealed to this court. This cause is remanded to the appellate court in order that defendant may initiate any further proceedings permitted by law. (See, *e.g.*, 107 Ill. 2d Rules 318(b), 367, 612(b).) The time for him to do so shall commence on the date the mandate of this court issues.

*Judgment reversed in part; cause remanded with directions.*