THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KENNETH GASTON, Defendant-Appellant.

First District (1st Division)    No. 1—91—0544

Opinion filed March 16, 1992.

Michael J. Pelletier and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant.

John M. O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Christine Perille, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Based on events of December 9, 1986, defendant Kenneth Gaston, Tanya Woods, and Ray Collins were convicted, in separate trials, of the armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2) of a paint store located at the intersection of Belmont and Ashland Avenues in Chicago. For his part, Gaston was sentenced to a prison term of 20 years.

In this appeal, Gaston, who is black, challenges the State's use of peremptory challenges to exclude black individuals from the venire during jury selection. He also complains that the length of sentence imposed was improper.

We remand for a hearing in accordance with the decision in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, retaining jurisdiction to review the subsequent proceedings and to then consider defendant's contentions concerning the propriety of sentence.

Questioning of the venire in this case was conducted by the trial judge. The record indicates each individual was asked the same general questions. Each was asked about location and ownership of residence, employment, marital and, when appropriate, family status, education, prior involvement in litigation, hobbies, preferred reading material, and existing friendships with either attorneys or police.

In all, 33 individuals were questioned. Nine individuals were excused by the court for cause. The State used four of five peremptory challenges to exclude black individuals. The only peremptory challenge not exercised against a black individual was used to exclude a white male who had previously been convicted and incarcerated for murder.

Upon completion of *voir dire*, counsel for defendant moved for a mistrial, charging that the State had exercised its peremptory challenges to purposefully discriminate against defendant by excluding black individuals from the venire on the basis of race. The trial judge promptly denied that motion, finding that the State had not used its peremptory challenges to "systematically" exclude black individuals.

Ultimately, four black individuals were among the members of the jury selected.

In *People v. Garrett* (1990), 139 Ill. 2d 189, 564 N.E.2d 784, our supreme court reviewed the process which must be employed pursuant to *Batson* relevant to a challenge that the State engaged in purposeful discrimination in jury selection. The procedure involves two distinct stages: a hearing to ascertain whether the defendant has es-

tablished a *prima facie* case of purposeful discrimination and, if so, a hearing in which the burden is shifted to the State to provide race neutral explanations for exercising the peremptory challenges. The court noted that, in *People v. Hope* (1990), 137 Ill. 2d 430, 560 N.E.2d 849, it had cautioned against collapsing that methodical approach into an "undifferentiated review" of defense and State contentions. (*Garrett*, 139 Ill. 2d at 201-03, 564 N.E.2d at 789-90.) The concern is that the reviewing court must then preliminarily determine whether it could be presumed the trial judge found defendant failed to make a *prima facie* case in order to properly reach the issue of the State's explanations for its use of peremptory challenges. *Garrett*, 139 Ill. 2d at 201-03, 564 N.E.2d at 789-90.

Such analysis is unnecessary here. The State was not even given an opportunity to explain its challenges. Instead, the trial judge's determination that the State had not "systematically" excluded blacks was a ruling that defendant had failed to establish a *prima facie* case of purposeful discrimination. That ruling is a factual finding which may be disturbed if it is against the manifest weight of the evidence. See *Garrett*, 139 Ill. 2d at 200-01, 564 N.E.2d at 789.

■ Because it is understood that peremptory challenges facilitate discrimination, a *prima facie* case can be established by showing that the defendant belongs to a cognizable racial group, the State peremptorily excused individuals belonging to that group, and that those facts, as well as any other relevant circumstances, raise an inference of purposeful racial discrimination. (*Garrett*, 139 Ill. 2d at 203, 564 N.E.2d at 790.) Defense counsel's identification, for the record, of the number and names of black venire members peremptorily excused is sufficient to establish all but the "other relevant circumstances" element in finding the existence of a *prima facie* case. (*Garrett*, 139 Ill. 2d at 203, 564 N.E.2d at 791.) "Other relevant circumstances" include the existence of a pattern of strikes against black individuals on the venire, the disproportionate use of strikes against such individuals, the level of black representation in the venire as compared to the jury, questions and statements made by the State, and the races of the defendant and victim or of the defendant and witnesses. *Garrett*, 139 Ill. 2d at 203, 564 N.E.2d at 791.

In *People v. Nicholson* (1991), 218 Ill. App. 3d 273, 577 N.E.2d 1313, the appellate court examined the above factors in a case presenting circumstances similar to those here. In *Nicholson*, the trial judge also questioned the venire and made the same general inquiries summarized above. The appellate court concluded that the State had exercised a pattern of exclusion because the State used five of six pe-

remptory challenges to exclude black individuals. Although the court noted that the record and briefs did not reveal the total number of blacks in the venire, the court was able to determine that 7 of the 27 individuals questioned were black. Five of those seven individuals were excluded by the State. The remaining two black individuals were made part of the jury. Based on that determination, the court concluded the State used peremptory challenges to exclude a disproportionate number of black individuals. The record indicated the excluded individuals constituted a heterogeneous group having race as the sole common characteristic. The appellate court therefore determined a *prima facie* case of discrimination was established and remanded the matter for a hearing pursuant to *Batson*.

■ Although the State has argued here that the defendant waived the opportunity to assert purposeful discrimination because he did not adequately establish, in the record, the racial composition of the venire, the condition of the record is no less clear than in *Nicholson*. The record does not reveal the racial identity of the individuals whose names appear in the record as members of the venire. However, defendant's counsel identified, by name, the racial identity of the individuals excused by the State in raising objection to the selection process. Further, we can determine that, allowing for the nine individuals excused by the trial judge for cause, the record indicates at least nine of the remaining individuals were black. Four black individuals were members of the jury and, in all, five black individuals were excluded by the State and defendant's counsel.

Defense counsel's citation of the number and names of black venire members peremptorily challenged by the State was sufficient to establish all elements of a *prima facie* case except for the critical "other relevant circumstances" element. As for those circumstances, there existed a pattern of strikes against black individuals. Four of the five peremptory challenges exercised by the State were used against black individuals. Use of four of five challenges constitutes a disproportionate use of challenges against black individuals. Finally, the black individuals excluded were a heterogeneous group and shared race as their only common characteristic. Dorothy Mae Dixon, a cashier for the Chicago Board of Education, was married and had three children. She lived on the city's west side and had no prior experience with the legal system either as a juror or as a litigant. She had attended high school for three years. Annette Williams, a teacher, had earned a master's degree in history. She was single and lived in a rented apartment. Betty Lee Holmes was 45 years old. She lived on the near north side of the city with her husband in a home that they

owned. She had five children and had attended high school for two years. Leroy Hemingway, a widower with five children, was 61 years old and lived on the west side of the city. He had attended high school for two years. In short, there were differences in gender, age, location of residence, marital status, and education among the black individuals excluded by the State.

Therefore, we conclude that the determination that defendant did not establish a *prima facie* case of purposeful discrimination was against the manifest weight of the evidence. Accordingly, we remand the matter for further proceedings pursuant to *Batson* to provide the State an opportunity to provide race-neutral explanations for its use of peremptory challenges. Where such remand is necessary, the supreme court has directed, the appellate court should retain jurisdiction to review the determination on the subsequent *Batson* proceedings. (*Garrett*, 139 Ill. 2d at 193-95, 564 N.E.2d at 786-87.) In that way, the "murky" issue of post-remand appellate procedure encountered when the circuit court is instructed to enter judgments according to its disposition following the *Batson* proceedings on remand is avoided. *Garrett*, 139 Ill. 2d at 193-94, 564 N.E.2d at 786. But *cf. People v. Nicholson* (1991), 218 Ill. App. 3d 273, 577 N.E.2d 1313 (appellate court determined *prima facie* case established and remanded the matter with alternative directions to vacate defendant's conviction or affirm according to whether the trial judge was satisfied that the State provided race-neutral explanations for exercising peremptory challenges).

■ For similar reasons, we decline, at this time, to address defendant's challenge to the propriety of the length of his prison sentence. The correct procedure when a cause must be remanded for *Batson* proceedings, but other, unrelated issues raised by defendant remain to be decided by the appellate court, is for the court to withhold disposition of those issues, retaining jurisdiction to consider them when it reviews the subsequent *Batson* proceedings. (*Garrett*, 139 Ill. 2d at 195-96, 564 N.E.2d at 787.) In that way, any confusion as to "when the time for appeal begins and ends, to and from which court an appeal should be taken, and on what issues" is avoided. (*Garrett*, 139 Ill. 2d at 194, 564 N.E.2d at 786.) In the same way, judicial efficiency is promoted because the possibility of a piecemeal appeal in the supreme court is precluded as all issues can be presented at the same time. See *Garrett*, 139 Ill. 2d at 196, 564 N.E.2d at 787. But *cf. People v. Suarez* (1991), 238 Ill. App. 3d 110 (appellate court remanded relevant portion of case for a

hearing pursuant to *Batson* while proceeding to consider other issues raised by defendant).

Reversed in part and remanded.

CAMPBELL and MANNING, JJ., concur.