THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JUAN RAMIREZ, Defendant-Appellant.

First District (6th Division)   No. 1—89—2670

Opinion filed April 24, 1992.—Rehearing denied June 29, 1992.

Randolph N. Stone, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Donald T. Lyman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

After a jury trial, defendant Juan Ramirez was convicted of first degree murder and concealment of a homicidal death (Ill. Rev. Stat. 1989, ch. 38, pars. 9—1, 9—3), and was sentenced to concurrent terms of 35 years and 5 years, respectively. On appeal, defendant has raised numerous issues. Our review, however, is limited to whether the trial judge erred in ruling that defendant was not entitled to a hearing to determine the prosecutor's reasons for exercising four peremptory challenges against black venirepersons.

We remand for a hearing in accordance with *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, retaining jurisdiction to review any subsequent proceedings pursuant to *People v. Garrett* (1990), 139 Ill. 2d 189, 564 N.E.2d 784.

We find the following facts to be relevant to the disposition of this appeal. During jury selection, the State used four of its seven peremptory challenges to exclude black venirepersons. The State did not exercise any peremptory challenges against white venirepersons. At the end of the *voir dire*, defense counsel made a motion alleging that the prosecutor's use of peremptory challenges was racially motivated, thereby entitling defendant to a *Batson* hearing. The trial court denied defendant's motion after the following colloquy:

> "MR. CAREY [defense counsel]: I don't know what your procedure is for a *Batson* motion. I make a *Batson* motion that four State strikes were all black. And there is—and doesn't appear to be any distinguishing characteristics of at least a couple that I can tell.

THE COURT: Well—

MR. MURRAY [assistant State's Attorney]: Judge—

THE COURT: I don't think that there is any basis for *Batson*. We have a number of blacks on this jury, you know. The fact that they struck 4 blacks is not the quantum that has to be shown, to raise that issue. As far as I'm concerned, they certainly got a quantity of blacks on this jury.

MR. MURRAY: Judge, I might also say that *Batson* motion points the *prima facie* evidence to someone of the same racial group as the defendant. So—I mean if Mr. Carey was making the motion on that basis, a *prima facie* basis, at this level, there is not.

THE COURT: There is not a basis for that. Certainly this is not a black defendant.

MR. CAREY: I believe the—my reading of it is a cognizable racial group being excluded, and four strikes were blacks. So that I believe each of them—the matters that the Court and the State has brought up are factors but an equal factor is the factor that I'm using for—as a basis for my motion. And we rest on that.

THE COURT: Very good, thank you. I do not find anything approaching the sufficient showing to raise *Batson*."

Although the record contains biographical data on the venire members, it does not reflect the racial composition of the venire. Nor does the record indicate the racial composition of the jury despite the trial judge's comments which indicate that there were some black jurors.

■ The standard for reviewing a trial court's decision on this issue is whether the determination is against the manifest weight of the evidence. (*People v. Henderson* (1990), 142 Ill. 2d 258, 568 N.E.2d 1234.) To establish a *prima facie* case of discrimination under *Batson*, defendant must raise the inference that the prosecutor exercised peremptory challenges to remove venire members based upon their race. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723; *People v. Edwards* (1991), 144 Ill. 2d 108, 579 N.E.2d 336.) The defendant may rely on the fact that peremptory challenges "constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate." (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723.) The defendant must then show that this and other relevant circumstances raise an inference that the prosecutor used the practice to exclude the venireperson from the jury based upon his race. (*Batson*, 476 U.S. 79, 80 L. Ed. 2d 69, 106 S. Ct.

1712.) In deciding whether defendant met this burden, the trial court should consider "all relevant circumstances." *Batson*, 476 U.S. at 96-97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.

■ "Other relevant circumstances" in determining whether defendant made a *prima facie* case of discriminatory jury selection include: a pattern of strikes against black venirepersons; the disproportionate use of strikes against such members; the level of black representation in the venire as compared to the jury; prosecutorial questions and statements during *voir dire* and while exercising challenges; and the races of defendant, victim, and witnesses. (*People v. Garrett*, 139 Ill. 2d 189, 564 N.E.2d 784.) As a general rule, however, the mere number of black venire members peremptorily challenged, without more, will not establish a *prima facie* case of discrimination. *People v. Mahaffey* (1989), 128 Ill. 2d 388, 539 N.E.2d 1172; *People v. Lockhart* (1990), 201 Ill. App. 3d 700, 558 N.E.2d 1345.

We note initially that the basis for the trial judge's denial of defendant's motion is unclear. The judge stated that the number of black strikes did not provide a basis for a *Batson* claim and pointed to the presence of black jurors. However, the trial judge also indicated that defendant lacked standing because he was not black. Because the record is unclear as to whether the trial court denied defendant's motion because defendant lacked standing or because he failed to establish a *prima facie* case, we consider both issues.

■ We initially consider the standing issue. At the time that the judge ruled, the guidelines for a *Batson* hearing required that defendant be a member of "a cognizable racial group" and that the excluded juror be a member of defendant's race. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723.) However, the United States Supreme Court eliminated this requirement in *Powers v. Ohio* (1991), 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364, where it held that "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race." (*Powers*, 499 U.S. at 419, 113 L. Ed. 2d at 419, 111 S. Ct. at 1366.) Therefore, in light of *Powers*, in order to have standing to pursue a *Batson* claim a defendant is no longer required to show that he is a member of a cognizable racial group whose members have been excluded. *People v. Edwards*, 144 Ill. 2d 108, 579 N.E.2d 336.

■ It is well settled that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, State or Federal, pending on direct review or not yet final. (*Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708.) Because this

case was pending on review when *Powers* was decided, the rule announced in *Powers* applies here. Accordingly, we hold that defendant had standing to object to the prosecution's use of peremptory challenges to exclude black venirepersons from the jury. See *People v. Pecor* (1991), 213 Ill. App. 3d 472, 572 N.E.2d 1064, *appeal allowed* (1991), 141 Ill. 2d 554.

■ We next consider whether the evidence established a *prima facie* case of discrimination under *Batson* in light of all the relevant circumstances. We believe that the evidence in this case established a "pattern" of strikes by the State against black venire members. A "pattern" of strikes is created "where the strikes affect members of a certain race to such a degree or with such a lack of apparent nonracial motivation that it suggests the possibility of racial motivation." (*People v. Andrews* (1992), 146 Ill. 2d 413, 429.) The record here shows that the prosecution exercised a total of four challenges and that all of those challenges were directed toward black venirepersons. No strikes were made against white venire members. We believe that such use of peremptory challenges suggests racial motivation and constitutes a "pattern" of strikes against blacks. See *People v. Andrews*, 146 Ill. 2d at 429 ("pattern" established where all of exercised strikes excluded blacks); *People v. Gaston* (1992), 227 Ill. App. 3d 486 (*prima facie* case established where four of five exercised strikes excluded blacks); *People v. Kindelan* (1991), 213 Ill. App. 3d 548, 572 N.E.2d 1138 ("pattern" established where all of exercised strikes excluded blacks); *People v. Daniels* (1987), 164 Ill. App. 3d 138, 517 N.E.2d 626 (*prima facie* case established where six of seven peremptory strikes excluded blacks).

In our view, the record also established the disproportionate use of strikes by the State against black venire members. The number of blacks stricken compared to the number of nonblacks stricken may reveal whether the State used a disproportionate number of strikes to exclude blacks. (*People v. Holman* (1989), 132 Ill. 2d 128, 547 N.E.2d 124 (no *prima facie* case where 10 white and 4 black venirepersons excused); *People v. Evans* (1988), 125 Ill. 2d 50, 530 N.E.2d 1360 (no *prima facie* case where twice as many nonblacks excused as blacks).) In *Andrews*, our supreme court found that the use of 100% of the State's peremptory challenges, or eight of eight, to exclude blacks was a "huge disparity" which constituted the disproportionate use of strikes against blacks. (*Andrews*, 146 Ill. 2d at 430.) Like *Andrews*, 100% of the State's exercised peremptory challenges here were used against black venire members, and no strike was exercised to exclude

nonblack members. In our opinion, this disparity constitutes the disproportionate use of strikes against black venirepersons.

Thus, we believe that the evidence established both a "pattern" of strikes and the disproportionate use of strikes against black venire members. Our supreme court has described these as "two very relevant factors [which] are strongly suggestive of the inference of discrimination required for a *prima facie* case." (*Andrews*, 146 Ill. 2d at 430.) Although we recognize that we must consider more than simply the number of black venire members excluded (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453), we find that these significant figures weigh strongly in favor of a finding that defendant raised an inference of discrimination.

The heterogeneity of the excluded venire members is also a highly relevant factor for *Batson* purposes. Initially, we reject the State's claim that defendant failed to establish a *prima facie* case because defendant did not explain why excluded blacks were a heterogeneous group sharing only race as a common trait. The record shows that defense counsel stated that the excluded blacks were a heterogeneous group and that the trial court precluded defense counsel from pursuing the issue by its prompt ruling against defendant.

Upon review of the biographical data presented in *voir dire*, we conclude that the four excluded venirepersons did not share any apparent characteristics aside from race which distinguished them significantly from the accepted nonblack jurors. For instance, three of the excluded venirepersons were married, and one was single. Most of the accepted white jurors were married, although several were single. Two of the excluded venirepersons had children, one with young children and one with adult children. Two of the excluded venire members had no children. Of the accepted white jurors, most of the married jurors had either young or adult children. Therefore, we discern no difference in the marital status and family life of the excluded and accepted jurors. Nor do we see a difference between the groups based upon occupation. The excluded jurors were a college teacher's assistant, a record clerk, an assistant supervisor in a company and a watchman. Among the accepted jurors was a college teacher, a security guard and a company manager. Finally, we note that three of the excluded venirepersons had relatives who were crime victims: sister murdered; brother paralyzed in robbery; and uncle injured in hit-and-run traffic accident. The accepted white jurors, however, had similar experiences: friend's daughter was murdered; daughter mugged and robbed; and wife became epileptic in a car accident. The fact that all of the excluded venirepersons were men is insignificant when we con-

sider that 7 of the 12 jurors were men. Based upon the foregoing, we conclude that the excluded blacks were heterogeneous as a group and substantially similar to the accepted, white jurors.

We are unpersuaded by the State's suggestion that the presence of some blacks on the jury negates a *prima facie* case of discrimination. While this factor is relevant, it is insufficient to defeat a *prima facie* case of discrimination established by the evidence. (*Andrews,* 146 Ill. 2d at 433.) Our supreme court in *Andrews* wrote: "The inquiry *** is whether the State discriminated against the [excluded] black venirepersons, *not* whether the State failed to discriminate against the *** accepted black jurors." (Emphasis in original.) (*Andrews,* 146 Ill. 2d at 433.) If the State excludes one black venireperson on the basis of race, *Batson* is violated regardless of how many black venirepersons are not excluded. (*People v. Andrews,* 146 Ill. 2d 413; *People v. Harris* (1989), 129 Ill. 2d 123, 544 N.E.2d 357.) Indeed, our courts have repeatedly found a *prima facie* case established despite the presence of blacks on the jury. See *People v. Andrews,* 146 Ill. 2d 413; *People v. Harris,* 129 Ill. 2d 123, 544 N.E.2d 357; *People v. Nicholson* (1991), 218 Ill. App. 3d 273, 577 N.E.2d 1313.

The State also maintains that defendant failed to properly preserve the *Batson* claim because the record fails to disclose the race of the venire members and thus precludes a comparison of that number to the number of blacks impaneled. Although such a comparison is a relevant factor (*People v. Evans,* 125 Ill. 2d 50, 530 N.E.2d 1360), we do not believe such absence overcomes the evidence in favor of a *prima facie* case. The State failed to provide the missing figure and thus cannot argue that such comparison would weigh against or negate a *prima facie* case. Such absence renders this a neutral factor in our analysis. *People v. Andrews,* 146 Ill. 2d 413.

We conclude that the above factors in combination were sufficient to raise the inference of discrimination required to establish a *prima facie* case under *Batson.* The record presented a pattern of strikes against blacks, the disproportionate use of strikes against blacks, and an excluded group of venirepersons that was heterogeneous. To the extent that the trial court denied defendant's motion based upon the failure to establish a *prima facie* case, we find such determination contrary to the manifest weight of the evidence.

In light of our determination that defendant established a *prima facie* case, we remand this cause to the circuit court of Cook County for a hearing to allow the State to present race-neutral explanations for the use of its peremptory challenges. The trial court shall then

determine whether the State's explanations are sufficient to rebut defendant's *prima facie* case.

Our supreme court has directed that where such remand for *Batson* proceedings is necessary, "the correct procedure" is for this court to withhold disposition of other unrelated issues, retaining jurisdiction to consider them after the *Batson* proceedings. (*Garrett*, 139 Ill. 2d at 195, 564 N.E.2d at 787; see also *People v. Gaston*, 227 Ill. App. 3d at 490; but *cf. People v. Nicholson*, 218 Ill. App. 3d 273, 577 N.E.2d 1313.) We therefore retain jurisdiction to review the trial court's ruling after the *Batson* hearing, and if necessary, to address the other issues raised by defendant in this appeal.

Reversed and remanded with directions.

EGAN, P.J., and LaPORTA, J., concur.