THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL GREEN, Defendant-Appellant.

First District (6th Division)   No. 1—89—1377

Opinion filed May 8, 1992.

Dennis M. Foley, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Guy L. Miller IV, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a trial by jury, defendant, Michael Green, was convicted of the murder of Mario Hernandez and two counts of armed robbery. The deceased, owner of a liquor store, was shot to death on the store premises following the armed robbery of the deceased and another store employee. The trial judge imposed a term of natural life imprisonment for murder and concurrent 30-year terms for each armed robbery offense. (This court has affirmed the convictions and sentences of codefendants Samuel Lee and L.C. Jackson for their participation in this offense, Lee in a Rule 23 order, October 25, 1991, No. 1—88—2801; L.C. Jackson also in a Rule 23 order, January 24, 1992, No. 1—89—0773. Codefendant Michael Jackson's appeal is pending.)

On appeal, defendant, a member of the black race, contends that the State exercised its peremptory challenges in a racially discriminatory manner. Although defendant raises numerous other issues on appeal, we limit our review to whether the trial judge erred

in ruling that defendant was not entitled to a hearing to determine the prosecutor's reasons for exercising five peremptory challenges against black venire members.

We remand for a hearing in accordance with *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, retaining jurisdiction to review any subsequent proceedings pursuant to *People v. Garrett* (1990), 139 Ill. 2d 189, 564 N.E.2d 784, and to then, if necessary, consider defendant's other contentions raised on appeal.

During jury selection, the judge allowed the State and defendant 14 peremptory challenges. The judge asked each venireperson to provide answers to general questions about location of residence; marital status; individual employment and employment of immediate family members; educational background; and participation in civic or religious organizations and hobbies.

The State exercised two of its first four peremptory challenges against black individuals. At that point, the following colloquy transpired:

"DEFENSE COUNSEL: I find nothing in their questions or responses in any way which would lead me to believe that they are anything other than upstanding, upright citizens and I would just be tendering an objection at this time because I think the State is exercising two of their fourteen peremptory challenges in a discriminatory manner and I wonder if the State would like to make a record and if the court would allow them to do so.

THE COURT: Not at this time. I think that motion is premature."

After the State exercised another peremptory challenge against a black man, defense counsel again objected. The State then exercised another peremptory challenge against a black woman, which gave rise to the following exchange:

"DEFENSE COUNSEL: Your honor, at this time the record should reflect Miss Bowie is a black woman and—

THE COURT: I will indicate them all. Defense challenged a white woman and a white man. And the State challenged a white woman and a black man.

DEFENSE COUNSEL: Your Honor, at this time, at this point in the jury selection process, I'd be making a motion for a mistrial. I think the State exercising the use of the peremptories has been purposeful discrimination against the defendant who is a black man. That they have made every ef-

fort that they could to exclude those blacks. They haven't offered any reason for the—

THE COURT: They haven't offered any reason because I haven't required them to offer any reason. They are not required to make—

DEFENSE COUNSEL: I did make an earlier request.

THE COURT: My point is they're not required to until I rule that they have to, so they don't have to at this juncture."

The record reveals that Jerline Craig, a black woman, was selected as the ninth juror. At that point, Craig was the only black individual assigned as a juror. The judge later excused Craig for cause. Defense counsel again objected as set forth below:

"DEFENSE COUNSEL: I am going to renew my motion for new jury selection process and new panel to be brought forth in its entirety and that now the one black person who was previously eligible to serve and has been removed. Or alternatively, to ask the State to bring forth an explanation for their motives in their—

THE COURT: We haven't got to that yet. Right now I do not believe a *Batson* motion is appropriate. The People have been assuming that is what you are making.

DEFENSE COUNSEL: Yes.

THE COURT: I do not believe that there has been a pattern of discrimination. *** We know that the victims in this case are Hispanic so whether or not *** even a *Batson* motion would be appropriate considering the facts at this point, I don't feel a *Batson* motion is appropriate. I am not saying that I don't—one might not be late. We'll address that when it arises ***."

In total, the State exercised 5 of its 13 challenges to exclude black venire members. The record does not reveal the racial composition of the last four jurors selected after Craig, nor the race of the two alternates. Thus, it is not clear whether any blacks were selected as jurors.

■ As evidenced by defense counsel's continual requests that the State offer an explanation for the use of its peremptory challenges against black individuals, this issue has not been waived for purposes of our review. Defense counsel is not required to use any particular or *pro forma* language to bring a *Batson* claim to a trial court's attention; rather, the fact that the trial court is made aware

of the claim, not the manner in which the claim is made, is dispositive. *People v. Whaley* (1989), 184 Ill. App. 3d 459, 540 N.E.2d 421.

■ A *prima facie* case of purposeful racial discrimination in jury selection as set forth in *Batson* can be established by relying on the fact that peremptory challenges facilitate discrimination and by showing that (1) the defendant belongs to a cognizable racial group; (2) the State peremptorily challenged venire members who belonged to that group; and (3) these facts "and any other relevant circumstances raise an inference" of purposeful racial discrimination. (*People v. Garrett*, 139 Ill. 2d at 203, 564 N.E.2d at 790.) Among many possible "relevant circumstances" may be a pattern of strikes against black venire members; the disproportionate use of strikes against such members; the level of black representation in the venire as compared to the jury; prosecutorial questions and statements during *voir dire* and while exercising challenges; and the races of defendant and victim or of defendant and witnesses. (*People v. Garrett*, 139 Ill. 2d 189, 564 N.E.2d 784.) The defendant may rely on the fact that peremptory challenges constitute a jury selection practice which permits "those to discriminate who are of a mind to discriminate." (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723.) A trial court's determination that a defendant has failed to establish a *prima facie* case of purposeful discrimination is a finding of fact and will not be overturned on review unless it is found to be against the manifest weight of the evidence. *People v. Brisbon* (1989), 129 Ill. 2d 200, 544 N.E.2d 297.

■ The correct procedure under *Batson* contemplates two distinct stages, namely, a hearing to ascertain whether the defendant has established a *prima facie* case of purposeful discrimination and, if so, a hearing in which the burden is shifted to the State to provide race-neutral explanations for exercising the peremptory challenges. Upon close review of the evidence in this case, we find that defendant met his burden in establishing a *prima facie* case of discrimination and that the judge erred in not requiring the State to provide a neutral explanation of its use of peremptory challenges.

■ We note initially that defendant meets the criterion of belonging to a cognizable racial group. Also, as previously stated, the record is unclear as to whether any black individuals were seated as jurors. While the mere number of black venire members peremptorily challenged, without more, will not establish a *prima facie* case of discrimination (*People v. Mahaffey* (1989), 128 Ill. 2d 388, 539 N.E.2d 1172; *People v. Lockhart* (1990), 201 Ill. App. 3d 700, 558 N.E.2d 1345), we find the existence of other relevant circumstances

sufficient to require the State to provide an explanation for the use of five peremptory challenges exercised against blacks.

After the judge excused Craig as a juror, it is important to note the dialogue between the parties indicates the judge's uncertainty as to the applicability of *Batson* in light of the fact that the victim was Hispanic and defendant was black. The judge's comments suggested incorrectly that defendant might not have standing to raise the issue. However, the race of both the defendant and victim has been considered a material fact falling within the category of relevant circumstances that a court must consider at the *prima facie* stage of establishing a *Batson* claim. See *People v. Mahaffey*, 128 Ill. 2d 388, 539 N.E.2d 1172; *People v. Andrews* (1988), 172 Ill. App. 3d 394, 526 N.E.2d 628.

We find the determination that defendant did not establish a *prima facie* case of purposeful discrimination was against the manifest weight of the evidence. Before this court, the State argues that the excluded jurors are not a heterogeneous group having race as a common factor, but that the distinguishing factor in this selection is the education, or lack thereof, of the excluded jurors. We find, however, that the validity of the State's explanation is more appropriately within the purview of the trial court.

Accordingly, this cause is remanded to the circuit court of Cook County for a hearing to allow the State to come forward with a neutral explanation for the use of its peremptory challenges against black venire members. We retain jurisdiction to review the determination on the subsequent *Batson* proceedings (*Garrett*, 139 Ill. 2d at 193-95, 564 N.E.2d at 786-87) and, if necessary, the remaining issues raised by defendant presented in this appeal.

Reversed and remanded with directions.

LaPORTA and RAKOWSKI, JJ., concur.